**The STATE of Ohio, Appellant,**

v.

**TODAY'S BOOKSTORE, INC. et al., Appellees.**

[Cite as *State v. Today's Bookstore, Inc.* (1993), 86 Ohio App.3d 810.]

Court of Appeals of Ohio,
Montgomery County.

No. 13153.

Decided March 23, 1993.

812

*John Scaccia,* Montgomery County Prosecuting Attorney, for appellant.

*Louis Hoffman* and *H. Louis Sirkin,* for appellees.

---

FAIN, Judge.

The city of Dayton appeals, pursuant to leave of court, from an order dismissing with prejudice the cases against William Nichols and Today's Bookstore, Inc. (referred to collectively as "Nichols") for pandering obscenity. The trial court ruled that (1) a confidential memorandum from the chief prosecutor for the city of Dayton that had been "leaked" to a local television station, WDTN, contained *Brady* material that must be disclosed to the defense, because, upon its disclosure to the press, it had lost whatever claim of attorney-client privilege it might have had; (2) the memorandum must be turned over to the defense; (3) the chief prosecutor was a material witness and was therefore subject to a defense subpoena requiring him to testify regarding his conclusions about past obscenity cases; (4) the chief prosecutor must be removed from the case because he was subpoenaed to be a witness for the defense. When the city of Dayton took the position that it could not and would not substitute counsel to try this case on the day of trial, the trial court dismissed these cases with prejudice, as a sanction for the city's failure to comply with the trial court's ruling.

We agree with the city that the trial court erred when it ordered the city to substitute counsel on the day of trial. Therefore, we reverse the judgment of the trial court and remand this cause for trial.

## I

Defendants-appellees Nichols and Today's Bookstore were each charged in Dayton Municipal Court with two counts of pandering obscenity on May 17, 1990, and the cases were consolidated for trial. The defendants filed waivers of their right to speedy trial, and the consolidated case originally proceeded to trial on April 15, 1991. After two days of jury selection, the trial court declared a mistrial because of alleged outside interference with prospective jurors. The case was reset for trial on October 7, 1991.

On July 9, 1991, the chief prosecutor for the city, Vincent Popp, sent a confidential memorandum regarding past obscenity cases to the city law director, Anthony Sawyer; the memorandum was intended for transmittal to the city manager. Within a day or so WDTN, also known as Channel 2 News, had obtained a copy of that memorandum from an unnamed source; the trial court commented that the memorandum had been "leaked" to the media. The news report, televised the same day that Channel 2 received the memo, showed an unreadable copy of the first page of the memorandum and quoted some of the figures and conclusions given by Popp, the author of the memo. Specifically, the news report listed in print on the screen some of the costs of prosecuting four prior obscenity cases in Dayton and printed on-screen Popp's conclusion that, if the trial court were to give the same jury instructions with regard to the community standard for obscenity in the upcoming trials, "*it would not be prudent* to expect different results" in the cases that remained to be tried. (Emphasis *sic.*)

On October 9, after almost three days of jury selection and after the jury had been impaneled, and three months after the news story about the memorandum had been broadcast, the defense filed a motion for the state to produce *Brady* material, specifically, the July 9 memorandum from the chief prosecutor.

The city opposed the motion, claiming that the document was protected by the attorney-client privilege and, furthermore, that it did not contain *Brady* material. The trial court ordered that the document be turned over to the court for an *in camera* inspection; after the inspection, the court delivered the document to defense counsel. After reviewing the document, defense counsel indicated an intent to subpoena Popp, who was trial counsel for the city, as a defense witness. The trial court ruled that Popp could be called as a defense witness and that he must, therefore, be removed from the case. The trial court wanted another prosecutor to take over the case that same day; when the city took the position that no other prosecutor could take up the case on such short notice, the trial court dismissed the case with prejudice. The city sought leave to appeal pursuant to R.C. 2945.67(A) and App.R. 5(A), and this court granted leave to appeal.

## II

Nichols, before addressing the merits of the city's assignments of error, first argues that this appeal should be dismissed because jeopardy attached at the time the jury was impaneled, so that deciding this appeal would be a purely advisory "futile act" because retrial is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

Whether jeopardy had attached is only the first question in the analysis. More important, the question is whether a retrial is barred in the case before us where, before evidence was taken, the trial court dismissed the case as a sanction for the city's having failed to substitute counsel on the day of trial after the trial court had ordered the city's trial counsel to testify for the defense.

In *United States v. Scott* (1978), 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65, 75, the United States Supreme Court held that jeopardy does not attach if the proceedings are terminated "favorably to the defendant on a basis not related to guilt or innocence." In *Scott,* the trial court had granted, at the close of all the evidence, the defendant's motion to dismiss the indictment on prejudicial pre-indictment delay. The Supreme Court, specifically overruling a line of cases that held that dismissal of the indictment after the jury was sworn amounted to an acquittal and barred retrial, held that the Double Jeopardy Clause does not bar retrial when the defendant deliberately sought termination of the proceedings on a basis unrelated to guilt or innocence. The dismissal was treated instead as a mistrial that does not bar a second prosecution.

Similarly, the Ohio Supreme Court in *State v. Broughton* (1991), 62 Ohio St.3d 253, 263, 581 N.E.2d 541, 549, held:

" * * * [W]here jeopardy has attached during the course of a criminal proceeding, a dismissal of the case may be treated in the same manner as a declaration of a mistrial and will not bar a subsequent trial when: (1) the dismissal is based *on a defense motion,* and (2) the court's decision in granting such motion is unrelated to a finding of factual guilt or innocence." (Emphasis added.) *Id.* at 266, 581 N.E.2d at 551.

And in *State v. Malinovsky* (1991), 60 Ohio St.3d 20, 573 N.E.2d 22, a divided Ohio Supreme Court, citing *Scott,* held that the Double Jeopardy Clause does not bar a retrial "where a criminal prosecution is dismissed for a failure to prosecute after the trial court has erroneously required the state to proceed with trial despite the state's properly filed Crim.R. 12(J) appeal." *Malinovsky,* 60 Ohio St.3d at 24, 573 N.E.2d at 26.

We note first that the trial court's decision in the case before us was unrelated to a finding of guilt or innocence. No testimony had been heard, and the court did not make any ruling, such as a ruling that an indictment is insufficient as a

matter of law, that would act as a determination that the defendants could not be convicted. Rather, the trial court dismissed the case after the defense subpoenaed the prosecuting attorney, the trial court ordered the prosecutor to testify for the defense and further ordered the city to substitute trial counsel, and the city took the position that it could not and would not do so on the day of trial.

The defense, while not directly requesting a dismissal, made the motion to compel production of *Brady* material and subpoenaed the prosecuting attorney directly after the jury was impaneled. The defense did not object when the trial court stated that it would be necessary to dismiss the case if the defense proceeded to subpoena Popp and the city declined to substitute counsel. If, as the city contends, it had a right to decline to substitute counsel on the day of trial, then the dismissal was more the result of Nichols's unreasonable demand that the city's trial counsel be disqualified on the day of trial, than it was the result of any intransigence on the part of the city.

The primary consideration is that it is the defendant who had control over the course of events. See *United States v. Dinitz* (1976), 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267. The bar against double jeopardy is absolute only when there has been a dismissal or acquittal based on a factual determination of innocence. *Malinovsky*, 60 Ohio St.3d at 23, 573 N.E.2d at 25; *Scott*, 437 U.S. at 94, 98 S.Ct. at 2195–2196, 57 L.Ed.2d at 76.

Therefore, we conclude that the Double Jeopardy Clause does not bar the prosecution of Nichols and Today's Bookstore.

### III

The city's First Assignment of Error is as follows:

"The lower court committed prejudicial error when it ruled that the memorandum of July 9, 1991, prepared by the Chief Prosecutor and marked confidential, was not subject to the attorney-client privilege because the media had gained access to it."

Infecting virtually all of the assignments of error is the issue of whether Popp's memorandum was relevant, probative evidence. In our view, it was not.

Nichols presumably wanted to show that the city's chief prosecutor and present trial counsel had concluded that the likelihood of obtaining a conviction in this kind of case was not great if the trial court were to persist in giving the kind of instruction concerning community standards for obscenity, based on the concept of what the community tolerates, that the trial court had been giving in recent cases. This is simply at attorney's assessment of the strength of his case. We suspect that Nichols would agree that the city's attorney's assessment of the

strength of his case would have no probative value if his opinion had been that the case against Nichols was strong; how strong or how weak an attorney believes his client's case to be simply has no probative force. Judges and juries must base their verdicts on the evidence, not the respective assessments of trial counsel.

If trial counsel's evaluation of the strength of his client's case were admissible evidence, the consequences would be disastrous for the prospects of settlement. Trial counsel could hardly be expected to communicate a negative assessment of his client's case if that communication might be received in evidence against his client. Consequently, a litigant with an inferior chance of prevailing would not have the benefit of that assessment for purposes of evaluating settlement.

■ The city argues that the memorandum had been prepared by the chief prosecutor, marked "confidential," and transmitted to the city manager with a cover memorandum also marked "confidential." The Law Department acts as counsel to the city and its officers. The city is like a corporation, and the same attorney-client privilege enjoyed by corporations is enjoyed by the city.

We agree. R.C. 2317.021 defines "client" for the purposes of privileged communications and acts as follows:

" 'Client' means a person, firm, partnership, corporation, or other association that, directly or through any representative, consults an attorney for the purpose of retaining the attorney or securing legal service or advice from him in his professional capacity, or consults an attorney employee for legal service or advice, and who communicates, either directly or through an agent, employee, or other representative, with such attorney[.] * * *

"This section shall be construed as in addition to, and not in limitation of, other laws affording protection to communications under the attorney-client privilege."

The city of Dayton is a "corporation or other association" that consulted an attorney employee for legal advice. Nichols does not deny that the attorney-client privilege exists between the city and its chief prosecutor, but argues instead that the trial court was correct in ruling that the memorandum lost its privilege when it was disclosed to the media.

The memorandum, which is in our record and which we have reviewed, related to pending and past obscenity cases that the Law Department was prosecuting on behalf of the city of Dayton. The subject of the memorandum was an analysis of past obscenity cases, an analysis of the impact of the cases on staff resources, a listing of pending obscenity cases, an analysis of the additional financial costs incurred in trying the obscenity cases, and a discussion of the use of expert witnesses. This is a communication between an attorney and his client with advice regarding the conduct of litigation on behalf of the client. Although Popp

opined that a conviction in a case of this kind would be unlikely so long as the trial court continued to give the instruction concerning community standards for obscenity that it had been giving in recent cases, at no point did Popp opine that these defendants were not guilty of pandering obscenity.

This memorandum is similar to the letter that was declared inadmissible in *Rowley v. Ferguson* (App.1942), 37 Ohio Law Abs. 531, 537, 48 N.E.2d 243, 248. In *Rowley,* this court held that the trial court erred in admitting into evidence letters from the Attorney General to the Auditor of State regarding a case in which the former represented the latter, because the letters were confidential communications between attorney and client. The plaintiff had argued that the communication was competent evidence because the letter expressed an opinion as to the probable result of an appeal of the case. We rejected that argument.

■ Besides being within the scope of the attorney-client privilege, Popp's memorandum revealed his mental processes and opinions, which are accorded special protection under the work-product doctrine. *Upjohn Co. v. United States* (1981), 449 U.S. 383, 399, 101 S.Ct. 677, 687, 66 L.Ed.2d 584, 597. It is clear that Nichols was interested only in the attorney's thoughts, opinions, and conclusions, and not the underlying facts, which were available from other, public sources.

■ We also disagree with Nichols's argument that the attorney-client privilege was waived and that the document lost its privilege when it was somehow disclosed to the news media.

■ Only the client can waive the attorney-client privilege. The mere fact that a memorandum subject to the attorney-client privilege comes into the hands of an opposing party does not necessitate a finding that the client has waived the privilege. Rather, any disclosure by the client must be voluntary, or at least under circumstances in which the disclosure to third persons is reasonably foreseeable by the client. If disclosure was by some person who was not entitled to have the memorandum or who did not have authority to waive the privilege, the document is still privileged. See *Powers v. Chicago Transit Auth.* (C.A.7, 1989), 890 F.2d 1355, 1357–1359. When the client is a corporation, the privilege can be waived only by a decision of management.

The trial court referred to a "leak" of the July 9 memorandum, indicating that the trial court had concluded that the disclosure was not voluntary. The trial court erred when it held that the attorney-client privilege had been waived where there was no evidence that the city had voluntarily relinquished the memorandum.

Nichols relies first on R.C. 2317.02(A), governing testimonial privileges, and argues that this statute modifies the common law of attorney-client privilege and must be strictly construed. We agree that the cases cited by Nichols establish

that the relationships covered by the privileges granted in R.C. 2317.02(A) are to be strictly construed. Thus, in *Weis v. Weis* (1947), 147 Ohio St. 416, 428–429, 34 O.O. 350, 355–356, 72 N.E.2d 245, 252, a nurse was not prohibited from testifying under the physician-patient privilege because she was not a physician, and in *Belichick v. Belichick* (1973), 37 Ohio App.2d 95, 66 O.O.2d 166, 307 N.E.2d 270, a dentist was ordered to testify because at that time the statute did not extend the privilege to dentists. However, there is no question that Popp is an attorney, that the city of Dayton was his client, and that by his memorandum Popp was giving his client advice regarding current litigation involving the client. R.C. 2317.02 provides the mandatory prohibition that an attorney *shall not* testify concerning his advice to his client.

Nichols argues that this ruling is merely an evidentiary ruling that is within the broad discretion of the trial court and that this court may not overturn the ruling absent an abuse of discretion. Nichols then points out that the city is assuming facts not in evidence when it argues that the privilege was not waived by one with authority to waive it, and that the burden is on the city to establish the privilege. As stated above, the city met its burden of showing that the memorandum was prepared and delivered within the scope of the attorney-client privilege, but Nichols has not met his burden of proving that the release of the document was voluntary and by one who had authority to waive the privilege. There is no evidence from which one could reasonably conclude that there was a voluntary waiver of the attorney-client privilege.

Nichols argues further that the disclosure negates the privilege whether or not the disclosure was voluntary. The cases Nichols cites do not support that argument and do not concern a situation, like the situation in the case before us, in which a document that was privileged is later disclosed by someone whose identity was not established.

Once again, we emphasize that even if Popp's memorandum were no longer privileged, it was not probative of any fact in this case, and its potential for prejudicing the jury was obvious. Therefore, we hold that it was an abuse of discretion to require Popp to testify concerning his memorandum even if it was no longer privileged.

The city's First Assignment of Error is sustained.

## IV

The city's Second Assignment of Error is as follows:

"The lower court committed prejudicial error when it ruled that the confidential memorandum of July 9, 1991, prepared by the Chief Prosecutor contained Brady material and was, therefore, discoverable by the defense."

■ It would appear that this assignment of error is moot in view the fact that a copy of the memorandum has, in fact, been delivered to the defense. However, in view of the possibility that similar issues may arise upon the remand of this cause, we will address the merits of this assignment.

■ The city first argues that, in addition to being covered by the attorney-client privilege, the memorandum constituted work product and was therefore not discoverable by the defense. The work-product doctrine is broader than the attorney-client privilege and applies to any document created in anticipation of litigation; it can be invoked by either the client or the attorney. While the attorney-client privilege does not apply to "memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and * * * writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories," *Hickman v. Taylor* (1947), 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451, 461, the work-product doctrine "is reflected * * * in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. * * * Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. * * * The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Id.* at 511, 67 S.Ct. at 393–394, 91 L.Ed. at 462.

Nichols asserts that the work-product doctrine does not apply to criminal cases. However, Crim.R. 16(B)(2) provides as follows:

"Information not subject to disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspections of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents."

This rule clearly applies the work-product doctrine to criminal cases, subject to the exceptions provided in the Rule. The exceptions are for (1) statements by the defendant or co-defendant; (2) the defendant's prior record; (3) reports of examination and tests; (4) evidence favorable to the defendant; and (5) *in camera* inspection of a witness's statement after direct examination at trial. Popp's memorandum obviously does not fit into categories (1), (2), (3), or (5), but Nichols alleges that the memorandum contains evidence favorable to the accused. We disagree.

Crim.R. 16(B)(1)(f) provides for the disclosure of evidence favorable to the defendant that is material either to guilt or punishment. This Rule is intended to

fulfill the due process requirements enunciated in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. There are three elements in *Brady:* (1) evidence that is (2) material to (3) guilt or punishment. These elements are lacking in Popp's memorandum. First, the memorandum contains no probative evidence.

Second, even if there were evidence in the memorandum, it is not material. The test of materiality is whether there is a reasonable probability, not a mere possibility, that the evidence would alter the outcome of the proceeding. *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481; *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898; *United States v. Agurs* (1976), 427 U.S. 97, 108–109, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 352–353. The prosecutor has no duty to disclose evidence that might improperly influence the jury and affect the verdict. *Id.* There is no constitutional duty for the prosecutor to disclose his entire files. *Id.*

Nichols argues that the present situation is almost identical to that in *United States v. DeMarco* (C.D.Cal.1975), 407 F.Supp. 107. We disagree. The memorandum at issue in *DeMarco* was written by a prosecutor and related to statements DeMarco and his attorney had made to the prosecution; the memo reflected DeMarco's continued insistence on his innocence and contradicted the government's witness who claimed that DeMarco had admitted guilt at that meeting. That memorandum clearly was relevant to the issue of guilt and could have affected the outcome of the proceeding.

To be able to alter the outcome of the proceeding, evidence must be admissible. Only relevant evidence is admissible. Evid.R. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

There is nothing in Popp's memorandum that is admissible evidence or relevant to the guilt or punishment of Nichols or Today's Bookstore. The trial court erred in holding that the memorandum contained *Brady* material.

Nichols argues that the determination of admissibility cannot be made in advance of trial. That argument is without merit. The memorandum is clearly irrelevant and not probative of any issue relating to pandering obscenity.

The elements of pandering obscenity are that the defendant (1) knowing the character of the material involved, did (2)(a) sell, deliver, or provide, or (b) possess or control (3) obscene material. The memorandum is irrelevant to any of those elements. It did not discuss the defendants or the character of the materials that the defendants sold, delivered, provided, or possessed.

Nichols argues that the trial court did not abuse its discretion in ruling that the memorandum contained *Brady* material because the memorandum contained evidence of community standards for obscenity. We disagree. There was no evidence regarding community standards in the memorandum. The memorandum merely pointed out that if the trial court continued, erroneously in Popp's view, to instruct juries that tolerance is the standard for determining community standards, it would be very difficult to obtain convictions in the remaining cases. This opinion of the prosecutor is no more admissible in the defendants' trial than would be his memorandum to the effect that he believed the defendants were guilty. Contrary to Nichols's assertion, there was no admission by the city regarding community standards, and Popp did not say that he believed the materials not to be obscene.[1] He did not mention the materials at issue in this case or in any other case that was pending or had been decided.

Nichols argues that "the acquittals discussed in the memorandum would strongly support an argument by Appellees (had they been convicted of pandering obscenity) that they believed in good faith that their materials were not outside the community standards of the Dayton area * * *." Nichols did not need Popp's memorandum in order to show the acquittals of other defendants, which is a matter of public record. Furthermore, Popp's memorandum is not the best evidence of those acquittals, should Nichols desire to use them as a mitigating factor.

We conclude that the trial court erred in ruling that the memorandum contained *Brady* material and was discoverable.

The city's Second Assignment of Error is sustained.

## V

The city's Third Assignment of Error is as follows:

"The lower court committed prejudicial error when it declined to quash the subpoena for the Chief Prosecutor and then ordered the Chief Prosecutor removed from the case since he was being called as a defense witness."

 A subpoena was issued to Popp for the purpose of eliciting his testimony about his memorandum and his opinions. The trial court refused to quash the subpoena because it concluded that the memorandum contained *Brady* material and the defense was entitled to examine Popp concerning the memorandum. The

---

1. Nichols alleges that "[t]he memorandum discusses, in no uncertain terms, the 'contemporary community standards' of the citizens of the City of Dayton" but neglects to quote or otherwise cite the certain terms discussed, and we have not located them.

trial court then ordered Popp removed as the city's trial counsel because he was being called as a material witness.

Nichols argues that the trial court did not abuse its discretion in overruling the city's motion to quash the subpoena or in disqualifying Popp as the city's trial counsel. We disagree both with the standard of review asserted in this argument and with the merits of the argument.

■■■ When the trial court's discretionary decision is based on a misconstruction of the law or an erroneous standard, that decision will not be accorded the deference that is usually due to the trial court, but instead will be reviewed *de novo;* it is appropriate for an appellate court to substitute its judgment for that of the trial court where matters of law are involved. *Castlebrook v. Dayton Properties Limited Partnership* (1992), 78 Ohio App.3d 340, 604 N.E.2d 808.

In the case before us, the trial court based its refusal to quash the subpoena on its conclusions, first, that the memorandum had lost its attorney-client privilege and, second, that Popp could be called to testify regarding the memorandum. Both conclusions were erroneous. First, we have concluded in Part III, above, that there was not sufficient evidence to show that the attorney-client privilege had been waived. Second, as stated above, Ohio statutes prohibit the testimony of an attorney regarding his advice to his client. R.C. 2317.02 provides as follows:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client, except that the attorney may testify by express consent of the client * * *."

■■■ The attorney-client privilege is so strong that it prevails over the right of free speech guaranteed by the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution. *Am. Motors Corp. v. Huffstutler* (1991), 61 Ohio St.3d 343, 575 N.E.2d 116.

For the same reasons that we have concluded that the memorandum was not relevant or material, we conclude that there was no relevant, material testimony that Popp could have given, and the trial court erred both in refusing to quash the subpoena and in disqualifying Popp as the city's trial counsel. Nichols's argument that the trial court had a substantial basis for disqualifying Popp because he would have given substantive evidence on behalf of the defense is without merit.

The trial court based its decision on an error of law, in that Popp could not be required to testify regarding his advice to his client; therefore, the trial court erred in refusing to quash the subpoena.

The city's Third Assignment of Error is sustained.

## VI

The city's Fourth Assignment of Error is as follows:

"After improperly removing the Chief Prosecutor from further representation in the case, the lower court further abused its discretion and committed prejudicial error when it ordered the case dismissed with prejudice."

 The trial court, after disqualifying Popp as the city's trial counsel on the day of trial, dismissed the case with prejudice when the city expressed its inability to substitute another trial counsel on the day of trial. Nichols argues that the trial court has inherent authority to dismiss a case for want of prosecution.

 While the trial court may have inherent power to dismiss a case for want of prosecution, the trial court erred in this case in concluding that there was a failure of prosecution. The city was ready, willing, and able to proceed with prosecution that day. First, the trial court based its decision on several erroneous legal conclusions, as discussed above. Second, a court has inherent power to dismiss with prejudice only where it is apparent that the defendant has been denied either a constitutional or statutory right, the violation of which would, in itself, bar prosecution. *State v. Sutton* (1980), 64 Ohio App.2d 105, 18 O.O.3d 83, 411 N.E.2d 818.

Nichols alleges that over eighteen months had elapsed since the charges were filed and that fundamental fairness justifies the dismissal. However, no constitutional or statutory rights were violated. Defendants had waived their right to a speedy trial, and the delays in bringing the matter to trial apparently were not caused by the city; indeed, this delay was caused by the defendants demanding material to which they were not entitled. Further, defendants have not alleged any type of prejudice caused by the delay in bringing the matter to trial, or that the delay was unnecessary, or that the defendants attempted to obtain an earlier trial date.

Nichols alleges that the trial court may dismiss an indictment when the actions of the prosecutor violate "fundamental conceptions of justice," citing *United States v. Lovasco* (1977), 431 U.S. 783, 790, 97 S.Ct. 2044, 2051, 52 L.Ed.2d 752, 759. In the case before us, however, the prosecutor did nothing to violate

"fundamental conceptions of justice." Rather, the prosecutor was simply doing his job, advising his client, and was prepared for trial.

Even if it had been proper to call Popp as a witness for the defense, that would not have justified his disqualification as trial counsel for the city.

DR 5–102 of the Code of Professional Responsibility speaks to the situation where trial counsel becomes a witness. The entire Rule is as follows:

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

"(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

Division (A) of the Rule has no application, since Popp would not have been testifying on behalf of his client, the city of Dayton. Division (B) of the Rule is obviously intended to protect the client. In this case, if the city of Dayton, a sophisticated litigant, was satisfied that the advantages of avoiding substituting trial counsel on the day of trial outweighed the disadvantages of having its trial counsel called to testify on behalf of the adverse party (on matters of dubious relevance to any issue in the case), that was a decision for the city to make. It would serve no useful purpose to "protect" the interests of the city by dismissing its prosecution with prejudice as a consequence of its refusal to substitute counsel when the worst that could have happened as a result of its decision to proceed with Popp as its counsel is that it might have suffered an adverse jury verdict as a consequence. To have insisted on protecting the city's interests by threatening it with dismissal of its prosecution with prejudice was an abuse of discretion.

The city's Fourth Assignment of Error is sustained.

## VII

All of the city's Assignments of Error having been sustained, the judgment of the trial court dismissing this cause with prejudice is reversed, and this cause is remanded for trial.

*Judgment reversed*
*and cause remanded.*

GRADY, P.J., and BROGAN, J., concur.