LIGHTBODY, Appellant,

v.

RUST et al., Appellees.

[Cite as *Lightbody v. Rust* (2000), 137 Ohio App.3d 658.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75460.

Decided May 9, 2000.

*McIntyre, Kahn, Kruse & Gillombardo, Robert W. McIntyre* and *Mark F. Kruse,* for appellant.

*Ralph C. Buss; Woodling, Krost & Rust* and *Kenneth L. Mitchell,* for appellees.

KILBANE, Judge.

Attorney William S. Lightbody refused to answer certain questions during his deposition taken in his suit against lawyers Charles R. Rust and Kenneth L. Mitchell, individually, and the law firm of Woodling, Krost & Rust ("Woodling") in which he alleged a breach of a co-counsel fee agreement. Lightbody claims Judge Christopher A. Boyko erred in granting appellee Woodling's Civ.R. 37 motion for an order compelling discovery. Lightbody challenges the judge's conclusion that certain answers would not violate his asserted attorney-client privilege because Woodling enjoyed the same attorney-client relationship with the nonparty/client as did Lightbody. He also challenges the judge's ruling requiring him to answer with legal conclusions because "[a]n attorney need not be an expert in contract law to answer questions that require a knowledge of basic contract law." We agree on that portion of the appeal relating to the attorney-client privilege and reverse in part. We find that portion of the order relating to compelling answers with legal conclusions not subject to our review.

Woodling, under various names, is a law firm engaged in the practice of intellectual property law since 1956. Lightbody was employed by Woodling in 1979 to work in the field of patents, trademarks, copyrights, and trade secrets.[1] In March 1982, Woodling entered into a written fee agreement with James C.

---

1. Lightbody claims he was an independent contractor sharing space in Woodling's offices.

Cooper, a client since 1976, whereby Woodling would receive a contingent fee from net proceeds received from the filing and prosecution of a patent infringement action on Cooper's patent 4,305,091 (the "Harris litigation") and matters related thereto. According to Lightbody, he and Rust, on behalf of Woodling, orally agreed that Lightbody would receive fifty percent of the compensation received by Woodling under the Cooper agreement in exchange for his services in that matter. Rust and Lightbody both worked on the federal court case and in December 1986 a jury found the Cooper patent valid but no infringement. An appeal followed.

Lightbody contends that Woodling modified the Cooper fee agreement by providing for an additional ten percent attorney fee derived from any other litigation from the "091 patent." The infringement suit was settled in 1989 for $250,000 and the transfer of certain Harris patents to Cooper. Lightbody received fifty percent of the attorney fee. In 1992, the "091" and other Harris patents generated a $650,000 fee for Woodling from which Lightbody received $217,000, or only one third of the fee. He was then advised he would no longer be receiving any payments or fees from the Cooper/Harris patent matters. In July 1993, Lightbody left the Woodling firm, apparently followed by fifty percent of its clients.

On February 18, 1998, he filed the present action, alleging eleven counts, including fraud, breach of contract, and breach of fiduciary duty, and requesting injunctive relief. Woodling answered with a general denial, sundry affirmative defenses, and a counterclaim praying damages resulting from, among others, Lightbody's appropriating of trade secrets and inducing Woodling's clients to sever the relationship. During his deposition, Lightbody refused to answer questions on the basis of attorney-client privilege and that the answer called for a legal conclusion. Lightbody moved for a protective order.

On July 21, 1998, Woodling filed a motion for an order compelling Lightbody to answer certain questions at his deposition regarding his communications with Cooper, the type of information he kept in his trial book, whether he approved the filing of the complaint in the Harris litigation, and whether Cooper asked him to undertake litigation in another matter in 1988. Attached to the motion and brief was the declaration of J. Carl Cooper that he swore to be the truth. Cooper claimed he understood Lightbody to be a "part of Mr. Rust's support staff of attorneys and other support people," that Lightbody assisted in the prosecution of the Harris litigation, and that he had communications with Lightbody "but not as an attorney separate and apart from Rust who was the primary attorney directing the litigation against Harris * * *." The declaration further provided that he had privileged communications with Rust and with Lightbody, but that the communications with Lightbody were "not separate and apart from Rust but

simply with him as part of Rust's legal support group." Woodling further argued that "[s]imply because Lightbody was a lawyer on the staff of Rust does not create a separate attorney-client relationship."

Woodling also asserted that Lightbody's objections, on the basis that his answers to how his contractual claims related to the Cooper fee agreement called for a legal conclusion, were disingenuous, especially considering that Lightbody was an attorney who had drafted contracts for at least eighteen years.

In his response, Lightbody argued that "Cooper is obviously a former client of plaintiff and the defendants, and is believed to be a client of the defendants to date." He also noted that Cooper's declaration does not contain a waiver of the attorney-client testimonial privilege contained in R.C. 2317.02 and that, therefore, he is precluded from testifying regarding privileged communications until he is given such a waiver. Moreover, he argued, DR 4-101 precludes both Lightbody *and* Woodling from disclosing Cooper's confidences or secrets.

Finally, Lightbody asserted that he was a patent lawyer, not a contract lawyer, and questions regarding whether he considered himself an "offeror" or "offeree" ·in any particular circumstance call for him to interpret legal terms. Moreover, the question "By what mechanism are you a party to the agreement attached [to the complaint] at Exhibit A?" was just "different phraseology for a question which had been asked approximately 6 times by defendants." According to Lightbody, the question also called for a legal conclusion.

On October 2, 1998, the trial judge entered the following order:

"Dfts Kenneth Mitchell's motion for an order compelling discovery is well taken and granted. Plaintiff's argument that answering the questions would violate the attorney–client privilege is not well taken as plaintiff does not have a privilege separate and apart from that of the defendants in this case. Paragraph 9 of the Cooper Declaration, which plaintiff refers to, states that Cooper did not consider the privileged communications with Lightbody to be separate and apart from Rust. Further EC 4-2 states: 'Unless the client otherwise directs, a lawyer may disclose the affairs of his client to partners or associates of his firm.' Plaintiff[']s objections based upon the questions seeking a legal conclusion are also not well taken. An attorney need not be an expert in contract law to answer questions that require a knowledge of basic contract law."

Lightbody has appealed this order to this court.

The first assignment of error states:

"The trial court erred when it ruled that the appellant, a plaintiff who is an attorney at law, must respond to questions posed to him at his deposition, when such questions concerned communications made by said attorney's client during the attorney–client relations."

Here Lightbody and Woodling assert the same arguments as below. The regulation of discovery is left to the discretion of the trial judge and, upon appeal to this court, we review assignments of error regarding discovery matters for an abuse of that discretion. *Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.* (1999), 134 Ohio App.3d 673, 731 N.E.2d 1209. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142; See, also, *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. Absent an abuse of discretion, this court must affirm the judge's disposition of discovery matters. *Alpha Benefits, supra.*

"A fundamental principle in the attorney-client relationship is that the attorney shall maintain the confidentiality of any information learned during the attorney-client relationship." *Kala v. Aluminum Smelting & Refining Co., Inc.* (1998), 81 Ohio St.3d 1, 4, 688 N.E.2d 258, 261–262. This precept helps ensure the client's confidence in the attorney and the client's freedom to divulge all matters related to the case, *id.,* thus "facilitat[ing] the full development of facts essential to proper representation," EC 4–1.

R.C. 2317.02(A) provides a testimonial privilege to communications between an attorney and client:

"An attorney [shall not testify] concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client * * *."

It is axiomatic that only the client can waive the attorney-client privilege. See, *e.g., State v. Today's Bookstore, Inc.* (1993), 86 Ohio App.3d 810, 818, 621 N.E.2d 1283, 1288; *H & D Steel Serv., Inc. v. Weston, Hurd, Fallon, Paisley & Howley* (July 23, 1998), Cuyahoga App. No. 72758, unreported, 1998 WL 413772, at *2. Absent express consent, it is not within the power of the client's attorney to waive that privilege. See *Maust v. Palmer* (1994), 94 Ohio App.3d 764, 768, 641 N.E.2d 818, 821; *State v. Shipley* (1994), 94 Ohio App.3d 771, 775, 641 N.E.2d 822, 825. Moreover, where the client has two attorneys who are partners, an express waiver of the testimonial privilege contained in R.C. 2317.02(A) as to one attorney does not result in a renunciation of all of the client's rights regarding the communications and authorization to the second attorney to testify with respect to those communications. *Haley v. Dempsey* (1921), 14 Ohio App. 326, 328–329, referring to G.C. 11494, the predecessor of R.C. 2317.02.

In addition to the testimonial privilege afforded to a client, Canon 4 of the Ohio Code of Professional Responsibility places upon an attorney the duty to preserve the confidences and secrets of a client. A " '[c]onfidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4–101(A). An attorney shall not knowingly reveal a confidence or secret of his client but may do so with the client's consent after full disclosure, or when required by law or court order. DR 4–101(B)(1), (C)(1), and (C)(2).

"The obligation of an attorney to preserve the confidences and secrets of the client continues even after the termination of the attorney's employment." *Kala*, 81 Ohio St.3d at 4, 688 N.E.2d at 262, citing EC 4–6; see, also, *id.* at 5, 688 N.E.2d at 262–263, discussing "presumption of shared confidences" in situations where an attorney leaves his or her former employment and becomes employed by a firm representing an opposing party. In addition, "[t]he confidences, which are assumed to be disclosed in the attorney-client relationship, are also presumed to be disclosed to an attorney's fellow associates." *Janis v. Castle Apts., Inc.* (1993), 90 Ohio App.3d 224, 228, 628 N.E.2d 149, 151, Therefore, the attorney also must "exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client * * *." DR 4–101(D).

In the present case, all of the parties have asserted that each provided legal services to Cooper regarding the prosecution of the Harris litigation. As such, all of the parties owe to Cooper the duty to preserve his confidences and secrets. They also owe to him the duty to prevent the dissemination of such information. See DR 4–101(D). They cannot, either individually or collectively, waive Cooper's testimonial privilege found in R.C. 2317.02(A). *Maust*, 94 Ohio App.3d at 768, 641 N.E.2d at 821; *Shipley*, 94 Ohio App.3d at 775, 641 N.E.2d at 825. Contrary to the judge's conclusion, the testimonial privilege does not belong to any one or all of these attorneys: it belongs solely to Cooper. *Today's Bookstore, Inc.*, 86 Ohio App.3d at 818, 621 N.E.2d at 1288; *H & D Steel Serv., Inc., supra.* Nothing in the record shows that Cooper expressly waived the testimonial privilege as it applies to Lightbody. Moreover, keeping in mind that *both* confidences *and* secrets disclosed to Lightbody are presumed to have been disclosed to defendants,[2] nothing in the record shows that Cooper consented to Woodling's attempt to elicit such confidential information for its own "advantage" after full disclosure

---

2. As noted above, Cooper stated in his declaration that he considered Lightbody as part of Rust's "legal support group" of attorneys.

to Cooper that these now-revealed confidences and secrets either may or will become part of the public record. See DR 4–101(B)(3). Without an express waiver from Cooper, after full disclosure, as to *all* parties in this action, Lightbody and Woodling must preserve his confidences and secrets with regard to the Harris litigation and otherwise.

The order effectively allowed Woodling, for the purpose of procuring discovery for its own advantage and without evidence of full disclosure to Cooper, to waive both Cooper's testimonial privilege and each attorney's ethical obligation to safeguard his confidences and secrets. As such, the disposition of the motion constitutes an abuse of discretion and Lightbody's first assignment of error is well taken.

In his second assignment of error, Lightbody asserts the following:

"The trial court erred when it ruled that a deponent must answer questions at deposition which call for a legal conclusion even though the deponent, an attorney at law, is not an expert in the subject area of law."

We lack authority to consider Lightbody's arguments regarding those deposition questions that he claims call for a legal conclusion because that portion of the order does not comport with the definition of "final order" under R.C. 2505.02(B).

R.C. 2505.02(B) provides that an order is a "final order" subject to review when it is one of the following:

"(1) An order that affects a *substantial right* in an action that in effect *determines the action and prevents a judgment;*

"(2) An order that affects a *substantial right* made in a *special proceeding or upon a summary application in an action after judgment;*

"(3) An order that *vacates or sets aside a judgment or grants a new trial;*

"(4) An order that grants or denies *a provisional remedy* and to which both of the following apply:

"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

"(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." (Emphasis added.)

That portion of the order compelling discovery as it relates to rendering a legal opinion or conclusion does not fall under subdivisions (B)(1), (2), (3), or (4) as set forth above because it does not determine the action or prevent a judgment, involve a special proceeding or a summary application in an action after judg-

ment, vacate or set aside a judgment, or grant a new trial, or involve a provisional remedy of the type included in subdivision (4). Even if this court concluded that it did involve the proper provisional remedy, Lightbody would be afforded a meaningful or effective remedy by an appeal following final judgment, as this assignment of error presents issues subject to standard evidentiary review.

The order of the trial court relating to the attorney-client privilege is reversed. The appeal of the order relating to compelling answers with legal conclusions is dismissed because it is not a final appealable order.

*Judgment accordingly.*

DYKE, P.J., concurs.

ROCCO, J., concurs in part and dissents in part.

ROCCO, Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that this court lacks jurisdiction to consider the second assignment of error. I also agree with the underlying purpose of the majority opinion on the first assignment of error: to protect the confidentiality of privileged, attorney-client communications. However, that confidentiality is not breached by disclosure among the client's co-counsel. I believe that one attorney can discover communications among the client and other attorneys on the same matter, provided that adequate protective orders are entered to prevent further disclosure to others. Therefore, I would affirm the trial court's order to allow discovery and remand with instructions to enter an appropriate protective order.