OPINION
{¶ 1} On August 31, 1999, the Collective Bargaining Agreement between appellee, ARMCO, Inc., and the United Steelworkers of America, Local 169, expired. At this time, appellee declared a lockout and brought in replacement workers. Thereafter, a number of instances of violence occurred. As a result, appellee filed a complaint and an application for a temporary restraining order on September 3, 1999. On September 28, 1999, the parties entered into an Agreed Preliminary Injunction (hereinafter "API") wherein the parties agreed to certain guidelines regarding their respective conduct.
 {¶ 2} On May 17, June 14, and July 19, 2002, respectively, appellee filed three motions for orders to show cause regarding civil contempt against five locked-out employees, appellants herein, Buster Daniel, Ned Gabriel, Leonard Durig, Timothy Risinger and Gary Gregory, alleging their conduct violated the API.[1] A hearing was held on August 2, 2002. By judgment entry filed September 17, 2002, the trial court found appellants in contempt and ordered them to pay fines.
 {¶ 3} Appellants filed a joint appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE STATEMENTS MADE BY APPELLANTS GABRIEL, DURIG, RISINGER AND GREGORY WERE NOT PROTECTED BY THE FIRST AMENDMENT."
 II {¶ 5} "THE TRIAL COURT ERRED BY APPLYING A SLIDING SCALE OF TOLERABLE SPEECH IN DETERMINING WHETHER THE STATEMENTS AT ISSUE WERE PROTECTED BY THE FIRST AMENDMENT."
 III {¶ 6} "THE TRIAL COURT ERRED IN HOLDING APPELLANT GABRIEL IN CONTEMPT BECAUSE ITS FINDING IS TAINTED BY DECISIONAL AMBIGUITY IN THAT IT CANNOT BE DETERMINED WHETHER THE DECISION WAS SOLELY BASED ON PHYSICAL CONDUCT NOT PROTECTED BY THE FIRST AMENDMENT OR WAS ALSO BASED ON SPEECH PROTECTED BY THE FIRST AMENDMENT."
 IV {¶ 7} "THE TRIAL COURT ERRED IN HOLDING APPELLANT GABRIEL IN CONTEMPT FOR HINDERING ACCESS TO THE MANSFIELD PLANT."
 V {¶ 8} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE STATEMENTS MADE BY APPELLANT DURIG WERE NOT PROTECTED BY THE FIRST AMENDMENT."
 VI {¶ 9} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE STATEMENTS MADE BY APPELLANT RISINGER WERE NOT PROTECTED BY THE FIRST AMENDMENT."
 VII {¶ 10} "THE TRIAL COURT ERRED IN HOLDING APPELLANT RISINGER IN CONTEMPT BECAUSE ITS FINDING IS TAINTED BY DECISIONAL AMBIGUITY IN THAT IT CANNOT BE DETERMINED WHETHER THE DECISION WAS SOLELY BASED ON PHYSICAL CONDUCT NOT PROTECTED BY THE FIRST AMENDMENT OR WAS ALSO BASED ON SPEECH PROTECTED BY THE FIRST AMENDMENT."
 VIII {¶ 11} "THE TRIAL COURT ERRED IN HOLDING APPELLANT GREGORY IN CONTEMPT BASED ON MAKING ALLEGEDLY THREATENING STATEMENTS AT THE PICKET LINE."
 IX {¶ 12} "THE TRIAL COURT ERRED IN HOLDING APPELLANT GREGORY IN CONTEMPT BASED ON MAKING SEXUAL AND RACIAL COMMENTS AT THE PICKET LINE."
 X {¶ 13} "THE TRIAL COURT ERRED IN FINDING APPELLANT DANIEL IN CONTEMPT OF THE AGREED PRELIMINARY INJUNCTION."
 XI {¶ 14} "THE TRIAL COURT ERRED IN RELYING ON ARMCO'S VIDEOTAPE AND RELATED EVIDENCE IN FINDING APPELLANTS DURIG, RISINGER AND GREGORY IN CONTEMPT."
 {¶ 15} Before we commence our review, it must be noted Plaintiff's Exhibits 1 through 5, the videotape recordings, were not transmitted with the record. This court specifically contacted the certified court reporter, Jamie Pellegrino. Ms. Pellegrino informed this court the videotapes were never in her physical possession. The only docketed entry pertaining to videotapes is of October 17, 2002, wherein appellee, under court order, is permitted to take a tape dated October 9, 1999 for copying. There is one sole tape in the file marked Defendant's Exhibit D which is a recording of May 25, 2002 wherein two picketers are arrested by the Mansfield Police Department.
 {¶ 16} It is noted in the transcript of the proceedings filed by the court reporter that each tape is marked, played during the trial, moved for admission and received into evidence. T. at 16, 41-42, 47, 77, 95-96, 140, 205.
 {¶ 17} It is an appellant's duty to order the necessary parts of a proceeding:
 {¶ 18} "At the time of filing the notice of appeal the appellant, in writing, shall order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record and file a copy of the order with the clerk. * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion."
 {¶ 19} We will review this case with the record before us under the following standard set forth in ARMCO, Inc. v. United Steel Workersof America, AFL-CIO-CLC (June 21, 2001), Richland App. No. 00-CA-95, at 5-6:
 {¶ 20} "When reviewing an issue of law, an appellate court may appropriately substitute its judgment for that of the trial court. Statev. Today's Bookstore, Inc. (1993), 86 Ohio App.3d 810, 823. A trial court is not given the deference on issues of law it would receive for discretionary decisions such as evaluating credibility of witnesses, making factual determinations, ruling on admission of evidence, etc.Id.; Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership (1992),78 Ohio App.3d 340, 346.
 {¶ 21} "Therefore, the appropriate standard of review in this case would be de novo.
 {¶ 22} "Contempt may be classified as direct or indirect. In re:Purola (1991), 73 Ohio App.3d 306, 310. Direct contempt occurs in the presence of the court, while indirect contempt occurs outside its immediate presence. Id. `Contempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions.' Id. at 311. Criminal and civil contempt serve different ends within the judicial system, and are governed by different rules.
 {¶ 23} "In Brown v. Executive 200 (1980), 64 Ohio St.2d 250,253-4, the Ohio Supreme Court discussed the distinction between civil and criminal contempt as follows:
 {¶ 24} "`While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket . . . since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court.'
 {¶ 25} "The burden of proof in a civil contempt proceeding is clear and convincing evidence. Brown v. Executive 200, Inc. (1980),supra. `Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' In re: Ayer (May 21, 1997), Hamilton App. No. C-960488, unreported.
 {¶ 26} "There are three elements in a civil contempt: 1) a prior order of the court, 2) proper notice to the alleged contemnor and 3) failure to abide by the court order, see Rossen v. Rossen (1964),2 Ohio App.2d 381."
 {¶ 27} When we are to judge the quality of the evidence vis-a-vis a weight of the evidence argument apart from the issue of First Amendment protections, it is this standard of review we shall follow.
 I, V, VI {¶ 28} In these assignments of error, appellants Gabriel, Durig, Risinger and Gregory argue the words spoken on the picket line were protected by the First Amendment of the United States Constitution.
 {¶ 29} As we will address in Assignments of Error III, IV, VIII and IX, the record reflects physical actions and verbal threats by appellants Gabriel and Gregory to establish a violation of the API. Therefore, the issue of whether their words were protected by theFirst Amendment is moot.
 {¶ 30} We will proceed to address the issue of protected speech vis-a-vis the words of appellants Durig and Risinger because it appears there was no other reason for the trial court's finding of contempt but their words.
 {¶ 31} The words of appellants Durig and Risinger were directed toward one of appellee's supervisory employees, Yohan Mills. The comments concerned the death of his infant child from multiple birth handicaps in 1985. T. at 111-112, 124. Both appellants called the infant a "crack baby," and taunted Mr. Mills as to the name on the infant's tombstone, "Crack Baby Mills." T. at 113, 115, 118-119. Appellant Durig even asked Mr. Mills "What is the fucking crack baby's name?" and "Sissy boy, what'd you name that crack baby?" T. at 116, 117.
 {¶ 32} Mr. Mills testified he wanted to personally defend his child when he heard the words. T. at 118. Mr. Mills had to calm himself after these taunts and did so by praying. T. at 117-118. He endeavored not to lower himself to the level of appellants Durig and Risinger. Id.
 {¶ 33} Both appellants freely admitted they slandered the child to harass and irritate Mr. Mills, and to retaliate for a remark he had made to appellant Risinger's wife regarding "I bet you my kids will have a better Christmas than yours." T. at 102-103, 106-108, 165-166.
 {¶ 34} Such barbs and taunts by adults appear to be entirely out of place in this civilized world. As the trial court noted, the incidents were fueled by the picketers' frustrations over the lockout. Apart from the social context of their genesis, we find insults on innocent children to be childish and demeaning.
 {¶ 35} The trial court characterized these taunts as language that "seeks to encourage physical combat." T. at 273. These so called "fighting words" are defined as "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke a violent reaction." Cohen v. California
(1971), 403 U.S. 15, 20. In Cincinnati v. Karlan (1974), 39 Ohio St.2d 107,110, the Supreme Court of Ohio stated "where epithets, used in a public place and wilfully directed at those who can hear them, are likely to provoke the average person to an immediate retaliatory breach of the peace, they are fighting words and the utterance thereof may be punished as a criminal act."
 {¶ 36} Without the benefit of the videotapes that the trial court viewed, we cannot find the trial court's characterization of these words as encouraging "physical combat" to be in error. The trial court had the opportunity to view the demeanor, volume and inflection of appellants Durig and Risinger in determining the words were not protected by theFirst Amendment. We have not been afforded this luxury. As a result, we are in a position to second-guess the trial court. We further find Mr. Mills's testimony established he thought the taunts were a call to arms, but resisted because of company policy. We find no error by the trial court in interpreting the language as violative of the API and not protected by the First Amendment.
 {¶ 37} Assignments of Error I, V, and VI are denied.
 II {¶ 38} Appellants claim the trial court erred by applying a sliding scale of speech to determine whether the statements were protected by the First Amendment.
 {¶ 39} In support of this argument, appellants supplemented the record with the written transcript of the October 17, 2001 hearing and the decision of the trial court finding no contempt regarding appellee's nineteenth motion for contempt. Apart from the trial court's findings on the seventeenth and eighteenth motions for contempt, appellants argue the trial court gave its tacit approval to the "offensive, crude, rude, vulgar and * * * childish" language of picketers Jerry Moton, Donald Metz, Anthony Tackett, Donald Holbrook and appellant Durig. October 17, 2001 T. at 19. By so deciding, the trial court set the bar and permitted similar comments as complained of sub judice.[2]
 {¶ 40} This panel finds it impossible to judge the videotapes from the October 17, 2001 hearing because the tapes were not supplemented with this record. As the trial court noted in its ruling, it had specifically listened to the tapes. The trial court made specific references to the volume, demeanor and language. The transcript of the hearing gives this writer only a glimpse of the words and based upon the lack of comparison, we cannot say the decision on the nineteenth contempt motion as to First Amendment words was "law of the case":
 {¶ 41} "Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." Nolan v.Nolan (1984), 11 Ohio St.3d 1, 3.
 {¶ 42} We further find this assignment of error is without merit as civil contempt is an individual analysis on a case-by-case basis. The parties of the nineteenth contempt motion include only one party of this motion.
 {¶ 43} In addition, it is the individual trial court's order that is being tested by the parties and as a result, a trial court can look at the passage of time and the increase in troublesome activity to test if the spirit and language of the API was being followed. The trial court has the inherent power to interpret and enforce its own order.
 {¶ 44} Assignment of Error II is denied.
 III, VII {¶ 45} Appellants Gabriel and Risinger claim the trial court erred in failing to specify whether its findings of contempt were based on physical activities or verbal words.During the hearing, the trial court found appellant Gabriel "is in violation and I impose upon him a $200 penalty" and as to appellant Risinger "I find an obligation to pay $350." T. at 275. The trial court prohibited both appellants from participating in "further picketing activities." Id. The judgment entry of September 17, 2002 is no more specific:
 {¶ 46} "As to Ned Gabriel, the Court finds from clear and convincing evidence that Mr. Daniel (sic) acted in contempt of this Court's Agreed Preliminary injunction on April 24, 2002. As a sanction for that contempt, this Court orders Mr. Gabriel to pay the Plaintiff Two Hundred Dollars ($200.00) within sixty days from the date of this Order, as well as the costs of the proceedings on the twenty-first contempt motion, not including any attorney fees or expenses. Furthermore, since Mr. Gabriel's activity arose directly from an extension of his participation in picket line activities, the Court enjoins Mr. Gabriel from participating in any further picket line activities at or near the Plaintiff's premises until further order of this Court.
 {¶ 47} " * * *
 {¶ 48} "With respect to Plaintiff's twenty-second motion, the Court finds from clear and convincing evidence that * * * Timothy Risinger acted in contempt of this Court's Agreed Preliminary injunction on * * * May 18, 2002. As a sanction for that contempt, this Court orders Mr. Durig and Mr. Risinger to each pay the Plaintiff Three Hundred Fifty Dollars ($350.00) within sixty days from the date of this Order, as well as the costs of the proceedings on the twenty-second contempt motion, not including any attorneys fees or expenses. Furthermore, since * * * some of the activity of Mr. Risinger arose directly from an extension of their participation in picket line activities, the Court enjoins Mr. Durig and Mr. Risinger from participating in any further picket line activities at or near the Plaintiff's premises until further order of this Court."
 {¶ 49} Neither party requested specific findings of fact and conclusions of law pursuant to Civ.R. 59 to test the decision. As we will address in Assignment of Error IV, there is clear and convincing evidence of the physical blocking of the plant exit by appellant Gabriel. We will therefore presume the trial court made its decision based upon the evidence in Assignment of Error IV. As to appellant Risinger, we will address the specifics of the evidence in Assignment of Error VI.
 {¶ 50} Assignments of Error III and VII are denied.
 IV {¶ 51} Appellant Gabriel claims the trial court erred in finding him in contempt of the API for hindering ingress and egress to the plant on April 24, 2002.
 {¶ 52} Paragraph five of the API specifically states "Defendants shall not block or obstruct free ingress or egress at any of the driveways, gateways or other entrances leading to Plaintiff's facility, and shall not park vehicles within 300 feet of any entrance to Plaintiff's facility."
 {¶ 53} Appellant Gabriel admitted to attempting to get "eye contact" with each of the employees as they exited the plant in their vehicles. He attempted to accomplish this by "walking up beside the car and walking along next to the car, next to the window of the driver." T. at 44. He did this because "I wanted all the replacement workers to look me right in the eye and look at whose job they stole. And I was trying to keep eye contact with them because I wanted them to see I'm out of work, you stole my job, and I was trying to make contact with them. I wanted them to see me." T. at 48.
 {¶ 54} Some vehicles swerved to get around him, but one did not and appellant Gabriel was able to grab the bed of the vehicle. T. at 46. Each of the attempts took no more than fifteen to twenty seconds. T. at 49-50.
 {¶ 55} Donald Duffey testified appellant Gabriel's actions blocked his view of oncoming traffic and he "was going back and forth to try to pull out, and I just took a chance and pulled out." T. at 57. Mr. Duffey could not see oncoming traffic because of appellant Gabriel's actions. T. at 58-59. Stephanie Windom testified appellant Gabriel "stepped in front of my car and blocked me from being able to pull out." T. at 61. He went around the vehicle and blocked the northbound view of oncoming traffic so that she could not see to pull out. Id. She was able to creep and edge her vehicle out little by little until appellant Gabriel walked away. T. at 63. Alysia Brink testified appellant Gabriel approached her driver's side window and blocked her view so she could not see northbound traffic. T. at 66-67. She had to inch forward to see oncoming traffic. T. at 66.[3]
 {¶ 56} Admittedly each of these approaches took a short time, however, each admitted to being unable to proceed in a normal conventional fashion in exiting the plant because of appellant Gabriel's blockage.
 {¶ 57} We find these incidents to be clear and convincing evidence of a violation of paragraph five of the API.
 {¶ 58} Assignment of Error IV is denied.
 VIII, IX {¶ 59} Appellant Gregory claims the trial court erred in finding his actions at various dates constituted a violation of the API.[4]
Appellant Gregory claims his language did not constitute true threats and his words of sexual and racial slander were not sufficient or egregious to warrant a finding of contempt.
 {¶ 60} During the hearing, the trial court found appellant Gregory's activities to be of "the greatest severity, duration and frequency." T. at 275. Neither the written transcript nor the judgment entry specifies which activities the trial court found to be in violation of the API.
 {¶ 61} There was testimony that appellant Gregory uttered sexual and racial epitaphs such as "nigger," "Afro cock sucker," "AK's marine bitch," "AK whore," "whore" and "bitch." T. at 171, 180-181, 209-212, 231. All of these names are mere words and without the videotapes, we are unable to determine if they constitute "fighting words."
 {¶ 62} However, there was specific testimony as to threats bantered by appellant Gregory regarding the use of deadly force. Appellant Gregory stated to appellee's employees "are you afraid we're going to get the guns out and you won't be able to see what we're doing," "[w]e should be getting the fucking guns out," I'm an "unstable mother fucker" and I "just as soon shoot them as look at them," I "assaulted their wives, their mothers, their whores and you can't get any of the cock suckers to fight," they don't "have enough balls to do anything about it" and "you should be shot." T. at 172, 174, 176, 177, 210.
 {¶ 63} Appellant Gregory admitted his sole purpose in engaging in the threatening remarks was to agitate and irritate, and he would have expected a fight if he spoke to anyone in such a manner in a Wal-Mart parking lot. T. at 172-173, 177, 181-182, 243. The employees who testified to these threats and taunts admitted they had been trained by appellee to ignore the issue, and did so to keep their jobs, but were nonetheless seriously troubled by the threats and adjusted their lives to accommodate the possibility of the fruition of the words. T. at 188, 214-216, 224, 232.
 {¶ 64} By appellant Gregory's own admissions, his statements were made to precipitate some violent reaction by the employees. By such admissions, he placed his own remarks beyond the mantel of free speech.Madsen v. Women's Health Center, Inc. (1994), 512 U.S. 753. "[I]t is not an element of the offense that the offender intends to carry out his threat or that he is even able to carry it out." Dayton v. Dunnigan
(1995), 103 Ohio App.3d 67, 71.
 {¶ 65} Based upon the totality of the comments apart from the sexual and racial epitaphs, we find the trial court did not err in labeling appellant Gregory's actions as egregious and in violation of paragraphs eleven and twelve of the API.
 {¶ 66} We will not address the sexual and racial remarks as the evidence is clear and convincing on the threatening remarks and the trial court's decision is not specific as to which conduct it considered violative of the API. Further, no specific request for findings of fact or conclusions of law was made.
 {¶ 67} Assignment of Error VIII is denied. Assignment of Error IX is moot.
 X {¶ 68} Appellant Daniel claims the trial court's finding of contempt was not supported by clear and convincing evidence.
 {¶ 69} Appellant Daniel was found in civil contempt for his actions of March 7, 2002, said actions being a violation of paragraph eleven of the API which states "Defendants shall not commit any acts and/or threats of violence, or harassment toward either the persons or property of any officers, agent, employees, members, prospective employees or members, customers, or other persons desiring to do business with Plaintiff * * * ."
 {¶ 70} Appellant Daniel argues the physical contact between him and William Jones was not purposeful or aggressive, but accidental. T. at 38-39. At first, appellant Daniel characterized the incident as a "small bump," but later explained as he approached Mr. Jones, Mr. Jones "raised his camera up and caught me in the cheek." T. at 15, 38.
 {¶ 71} In contrast to this version is the testimony of Mr. Jones who explained he was videotaping when the following occurred:
 {¶ 72} "[H]e [appellant Daniel] turned and looked at me and decided to come back and give me some more of his rhetoric. And he just came — I thought he was going to stop, but he came at a pretty nice pace, and I'm standing there filming and he bumped my camera. And when he bumped my camera, the lens hits me in the eye and, of course, I fell back." T. at 23-24.
 {¶ 73} Mr. Jones testified the rubber cup from the camera hit his eye and it started watering. T. at 24.
 {¶ 74} Based upon the trial court's perspective with its knowledge of the videotape and the demeanor and credibility of the witness, we cannot find the trial court erred in finding clear and convincing evidence to support its decision.
 {¶ 75} Assignment of Error X is denied.
 XI {¶ 76} Appellants claim the trial court permitted the videotapes of the incidents to be entered into evidence in violation of R.C.2933.62(A).
 {¶ 77} Nowhere in the transcript of the proceedings is this issue raised. When each videotape is moved for admission into evidence, no objection was made. T. at 16, 47, 77, 140, 205. Further, appellants relied on portions of the videotapes in their own examinations of the witnesses, and specifically argued portions of the videotapes in their closing arguments. T. at 33, 42, 66-68, 93, 96, 269. We find by inviting the error and consenting to it, appellants waived any legitimate objection on appeal:
 {¶ 78} "The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." State v. Kollar (1915), 93 Ohio St. 89, 91.
 {¶ 79} Assignment of Error XI is denied.
 {¶ 80} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.
By Farmer, J., and Edwards, J. concur.
[1] Various contempt motions have been filed in this case. The motions at issue in this case are the twenty-first, twenty-second and twenty-third.
[2] In its decision on the nineteenth contempt motion, the trial court found the volume of the language did not violate the API, the factual language did not constitute threats and the employment sexual harassment standard did not apply. October 17, 2001 T. at 21-23.
[3] We note this testimony is given with the showing of the videotape and is part of a narrative.
[4] Witnesses testified to incidents on May 14 and 30, 2002, June 11 and 26, 2002, and July 1, 2002.