[Cite as *Crist v. Precise Boring, Inc.*, 2012-Ohio-2455.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHAD M. CRIST, et al. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellees/Cross-Appellants | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case Nos. 11-CA-21 |
| PRECISE BORING, INC., et al. | : | |
| | : | |
| | : | |
| Defendant-Appellants/Cross-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court of
                             Common Pleas, Case No. 07 CV 1100

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      May 24, 2012

APPEARANCES:

For Appellants/Cross-Appellees:          For Appellees/Cross-Appellants:

HANSEL RHEE                              DANIEL J. FRUTH
KATHERINE G. MANGHILLIS                  109 N. Broad St., Suite 200
250 West St.                             P.O. Box 130
Columbus, OH 43215                       Lancaster, OH 43130-0130

*Delaney, J.*

{¶1} Defendants-Appellants/Cross-Appellees Precise Boring, Inc., Precise Power & Gas, LLC, and Matthew Upp and Plaintiff-Appellee/Cross-Appellant Chad M. Crist appeal the judgment entries of the Fairfield County Court of Common Pleas arising from the judicial dissolution of Precise Boring, Inc. and Precise Power & Gas, LLC.

## FACTS AND PROCEDURAL HISTORY

{¶2} Chad Crist and Matthew Upp were coworkers in the construction industry when they decided to work together to create a company that performs directional underground boring. Crist and Upp first created Crist & Upp, LLC, where Crist and Upp had 50% ownership of the limited liability company.

{¶3} On July 1, 2002, Crist and Upp created Precise Boring, Inc. ("PBI"). Crist and Upp were the sole directors and shareholders, each having a 50% interest in the business.

{¶4} Upp determined it would be beneficial for tax purposes to create a separate business entity. On April 11, 2005, Upp and Crist formed Precise Power and Gas, LLC ("PPG"). Crist and Upp were the only members, each having a 50% ownership interest. In addition to being a member, Upp was PPG's manager.

{¶5} PPG had no tangible assets of its own. PBI owned the directional boring equipment. PBI paid the expenses for the operation of PBI and PPG, while PPG generated only profit. In order to balance the expenses and profits between PBI and PPG, the parties created an intercompany note whereby PPG periodically paid PBI for operating expenses and overhead.

{¶6}  In 2005, the relationship between Crist and Upp began to deteriorate. Upp became a shareholder in Treton, Inc. in September 2006.  Upp and his wife were 50% shareholders with Pat Covell and his wife being the other 50% shareholders. Treton bid on work as a general contractor and then subcontracted the boring work to PPG.  Treton employees used PBI equipment.

{¶7}  PBI and PPG had several bank accounts.  PBI and PPG both had operating accounts with Fifth Third Bank to which Crist and Upp each had access. PPG had a bank account with Key Bank, but only Upp had access to this account.

{¶8}  In March 2007, Crist noticed PPG's Fifth Third account was decreasing. Crist became concerned that PBI could not cover the expenses for both PBI and PPG. Crist attempted to withdraw money from PPG's account at Key Bank but found he did not have access to the account.

{¶9}  Crist interpreted this as an act by Upp to embezzle business funds.  Crist transferred PBI's funds to a new Fifth Third Bank account to which Upp had no access.  Upp interpreted Crist's actions in attempting to access the Key Bank account without his knowledge as an attempt to take company funds.  Upp transferred PPG's Key Bank account balance to Peoples Bank, to which Crist had no access.

{¶10} Crist and Upp knew they no longer desired to work with each other.  On May 11, 2007, Crist and Upp met with their accountants.  The accountants recommended April 30, 2007 as a "split date" because it was the end of the financial quarter and worked well for tax purposes.  As of April 30, 2007, PPG operated as if it were Upp's company and PBI operated as if it were Crist's company.  However, there was no transfer of ownership interests or a division of jointly-held assets.

{¶11} After May 11, 2007, Crist's accountant recommended the spilt date for PBI be December 31, 2007 because it would be more beneficial to PBI for tax purposes.

{¶12} Crist worked to wind up PBI after April 30, 2007. On May 7, 2007, Crist created a new corporation entitled Precise Boring of Ohio, Inc. ("PBO"). PPG continued operations. PBO and PPG competed with each other for directional boring work.

{¶13} Crist filed a complaint on September 10, 2007 with the Fairfield County Court of Common Pleas against Upp, PBI, and PPG. In the complaint, Crist requested judicial dissolution of PBI and PPG, claimed a breach of fiduciary duties, and monetary damages.

{¶14} Upp answered the complaint and filed a counterclaim and third party complaint. The counterclaim requested judicial dissolution of PBI and PPG, an accounting of PBI, conversion, unjust enrichment, and intentional interference with business relations. Upp's third party complaint was against PBO, claiming the corporation interfered with the business of PBI and PPG.

{¶15} The parties tried the matter before the trial court on March 31, 2009. The parties filed proposed findings of facts and conclusions of law after trial. During the trial court's consideration of the evidence and arguments, the trial court required further argument as to the significance of the April 30, 2007 "split date." On August 14, 2009, the trial court issued an entry requesting the parties to clarify the following:

What authority compels the Court to follow the April 30, 2007 split date and value assets as of that date, when these entities still exist and will not be dissolved until the Court issues its final judgment?

{¶16} The trial court ordered the parties to submit memoranda on the issue. Both parties responded to the trial court's order.

{¶17} On September 22, 2009, the trial court issued a comprehensive decision as to matters raised in the complaint, counterclaim, and third party complaint. We address only the findings of fact and conclusions of law relevant to this appeal.

{¶18} The trial court granted the judicial dissolution of PBI, finding the evidence showed PBI began winding up its affairs after April 30, 2007. This permitted the trial court to reconcile PBI's assets and liabilities. The trial court found no such evidence as to PPG. The trial court determined there was insufficient evidentiary support to show April 30, 2007 was the "split date" of the corporations because the ownership interests in PBI or PPG did not change after April 30, 2007. Crist and Upp were still one-half owners of PBI and PPG after April 30, 2007. As such, the trial court ordered PPG to wind up and perform an accounting before it could judicially dissolve PPG. The trial court ordered a final accounting of the current assets and liabilities of PPG from April 30, 2007 to September 30, 2009 by an agreed upon third party accountant. The trial court noted in its judgment the final accounting was not an opportunity for the parties to relitigate any issues already presented or to raise any new issues.

{¶19} The September 22, 2009 judgment further ordered the parties to cease all operations of PPG, except for work already in progress. Other than ordinary and necessary business expenses, no party was permitted to disturb the assets of PPG.

The trial court prohibited the parties from making a distribution, payment, dividend issuance, or any other transfer of business funds to itself without prior court approval.

{¶20} Crist filed a "Multi-Branch Motion" on October 13, 2009. In his motion, Crist argued for a nunc pro tunc entry to correct a mathematical error, a motion for clarification, and a motion for reconsideration of the September 22, 2009 judgment. Upp filed an opposition motion and his own motion for reconsideration of the September 22, 2009 judgment. The trial court held a hearing on the motions on February 5, 2010. The focus of the hearing was the significance of April 30, 2007 to the parties. Crist argued it was a date established by the accountants for tax purposes. Upp argued Crist and Upp agreed to split ownership of PBI and PPG effective April 30, 2007.

{¶21} The trial court issued its decision on the motions for reconsideration on February 9, 2010. The trial court affirmed its earlier decision that the April 30, 2007 date had no effect on the dissolution of PBI and PPG and served only as a valuation date. The trial court found there was no evidence of an assignment of Crist's interests in PPG on April 30, 2007, Crist did not waive his interests in PPG, nor was Crist estopped from denying an agreement existed as to his interest in PPG.

{¶22} On December 15, 2009, the parties filed an agreed entry that Philip Shannon, CPA, was to conduct the final accounting of PPG. The trial court did not designate Shannon as a receiver. (February 9, 2010 Judgment Entry). On April 21, 2010, Crist filed a motion requesting that any documents provided by PPG to Shannon should also be given to Crist. The trial court denied Crist's request. Crist filed a motion for leave to conduct post trial discovery on June 7, 2010. In his motion, he

argued by the trial court's denial of his April 21, 2010 motion, Crist could only use discovery to ensure Upp was complying with the September 22, 2009 judgment. It had come to Crist's attention that approximately $1,100,000 of PPG's revenues and $600,000 of PPG equipment had been moved off PPG's books to Precision Pipeline, LLC, an entity owned by Upp. Crist believed these transfers occurred after September 22, 2009.

{¶23} Upp responded to the motion. On July 30, 2010, the trial court denied the motion. The trial court found there was no procedural mechanism by which Crist could conduct discovery at that stage of the proceedings. The trial court further found that Crist was attempting to oversee the accounting already being conducted by the parties' agreed-upon accountant.

{¶24} Shannon filed his final accounting report on February 22, 2011 ("Shannon Report"). Upp filed objections to the Shannon Report. Crist did not file objections. On March 14, 2011, the trial court adopted the conclusions made in the Shannon Report, with some modifications. The trial court overruled Upp's objections to the Shannon Report.

{¶25} With respect to the backdated journal entries raised by Crist in his discovery motions, the Shannon Report stated:

> When Mr. Upp and his advisors learned of the Court's decision to treat PPG as owned jointly by Mr. Crist and Mr. Upp they attempted to adjust the books of PPG to reflect what would happen if the business activity had been transferred to the new company as contemplated by the Court's earlier decision. PPG's books reflected the payroll and it was

treated as a subcontractor to the new company and was assigned part of the contract income for its services. These adjustments consisted of approximately 386 line items. We did not attempt to evaluate each entry in detail but overall they appeared to carry out the purpose of moving the activity of PPG to the new company as contemplated by the Court's earlier decision. The timing of the transfers was later due to the mistaken belief that Mr. Upp had sole ownership of PPG.

{¶26} The Shannon Report also awarded Upp a salary for operating PPG:

Mr. Upp did not receive a salary for operating [PPG] during the period we analyzed and part of the withdrawals could be considered payment for those services. For reference, Mr. Upp and Mr. Crist each received a salary of $275,000 per year during 2006 which was before they split. If this were considered a reasonable annual compensation for running the Company, it would equate to approximately $657,000 for the period of 4/30/07 though 9/22/09.

{¶27} The trial court also found that Mrs. Bonnie Upp should receive a salary for her work for PPG during that time period in the amount of $42,000. In total, Mr. and Mrs. Upp were granted salaries in the amount of $699,000.

{¶28} On April 12, 2011, the trial court reduced the multiple findings to judgment. Upp was awarded $182,091.75. Crist was awarded $367,247.48.

{¶29} Upp filed his notice of appeal on April 13, 2011. Crist also filed a notice of appeal of the trial court's decision. We now consider Upp's appeal and Crist's cross appeal.

**UPP'S APPEAL**

<u>ASSIGNMENTS OF ERROR</u>

{¶30} Upp raises two Assignments of Error:

{¶31} "I. BECAUSE THE TRIAL COURT APPLIED ONLY THE LAW OF EXPRESS CONTRACTS AND NOT THE LAW OF IMPLIED CONTRACTS, THE TRIAL COURT ERRONEOUSLY CONCLUDED THAT THE PARTIES' AGREEMENT TO RELINQUISH THEIR OWNERSHIP INTERESTS IN THE OTHER'S COMPANY WAS NOT A CONTRACT.  (SEE JUDGMENT ENTRY DATED SEPTEMBER 22, 2009 AT 11-12; 34-35 AND JUDGMENT ENTRY DATED FEBRUARY 9, 2010 AT 2; 5-9).

{¶32} "II. THE TRIAL COURT ERRONEOUSLY CONCLUDED THAT UPP CANNOT ESTABLISH PROMISSORY ESTOPPEL SUCH THAT CRIST IS ESTOPPED FROM DENYING THAT A CONTRACT EXISTED TO RELINQUISH HIS OWNERSHIP INTEREST IN PPG IN EXCHANGE FOR UPP'S RELINQUISHMENT OF HIS OWNERSHIP INTEREST IN PBI.  (SEE JUDGMENT ENTRY DATED FEBRUARY 9, 2010 AT 5-9)."

<u>ANALYSIS</u>

*I.*

{¶33} Upp argues in his first Assignment of Error that the trial court erred in determining the evidence did not support the existence of a contract between Upp and Crist to relinquish their respective ownership in PBI and PPG on April 30, 2007.  Upp contends the evidence showed an implied contract existed between the parties.  We disagree.

{¶34} The trial court conducted a bench trial on this case. As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Peterson v. Peterson,* 5th Dist. No. CT2003–0049, 2004–Ohio–4714, ¶ 10, citing *Cross Truck v. Jeffries,* 5th Dist. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Questions of law are reviewed by the court de novo. *Erie Ins. Co. v. Paradise,* 5th Dist. No. 2008CA00084, 2009-Ohio-4005, ¶12.

{¶35} At trial, the parties testified as to their understanding of the April 30, 2007 "split date." The parties' accountants also testified to the meaning of the April 30, 2007 date. After trial, the parties submitted proposed findings of fact and conclusions of law. As to the effect of the split, Crist stated in his proposed findings of fact and conclusions of law, "[t]he parties stipulated that after April 30, 2007, PPG essentially became Matthew Upp's company." Upp stated, "[a]fter April 30, 2007, PPG was operated as if it were solely Upp's company."

{¶36} In further consideration of the issue, the trial court requested more briefing from the parties as to the matter of the split date.

{¶37} Based on the evidence presented at trial and the parties' responses to the trial court's inquiry, the court held in its September 22, 2009 judgment the April 30, 2007 split date was not a contract between Upp and Crist to split their ownership interests in PPG and PBI. The court found the parties provided so little evidence of the detail of the split date, the court could not state the terms of the split with

definiteness and certainty, elements necessary to declare the existence of a contract. (Sept. 22, 2009 Judgment Entry).

{¶38} Crist and Upp filed motions for reconsideration.  Upp's motion was as to the April 30, 2007 split date.  The trial court held a hearing on February 5, 2010 solely on what discussions Crist and Upp had regarding April 30, 2007 and the transfer of interests in the companies.  Based on the hearing and the arguments raised in Upp's motion for reconsideration, the trial court affirmed its earlier decision as to the significance of April 30, 2007.

{¶39} In his motion for reconsideration, Upp also argued there was evidence presented to show either Crist's assignment of his interest in PPG to Upp, Crist's waiver of his interest in PPG, or that Crist was barred from claiming an interest in PPG by promissory estoppel.  The trial court considered Upp's arguments and found no evidentiary support for assignment, waiver, or promissory estoppel.

{¶40} On appeal, Upp argues the trial court analyzed the evidence using the law as to express contracts.  Upp states the evidence established the existence of an implied contract between Upp and Crist.

{¶41} Crist argues that Upp failed to raise the issue of an implied contract at the trial court level.  We have reviewed the trial court record as to Upp's first Assignment of Error.  During the parties' extensive briefing and arguments and the trial court's thorough consideration of the same, Upp did not raise the argument at the trial court level of an implied contract between Upp and Crist.  We will not consider the merits of Upp's first Assignment of Error because Upp cannot raise an argument for

the first time on appeal. *Deutsche Natl. Trust Co. v. Pagani,* 5th Dist. No. 09CA000013, 2009-Ohio-5665, ¶ 29.

{¶42} Upp's first Assignment of Error is overruled.

*II.*

{¶43} Upp argues in his second Assignment of Error the trial court erred when it denied Upp's claim for recovery under promissory estoppel. We disagree.

{¶44} Promissory estoppel is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations. *GGJ, Inc. v. Tuscarawas Cty. Bd. of Commrs.,* 5th Dist. No. 2005AP070047, 2006-Ohio-2527, ¶ 11, citing *Karnes v. Doctors Hosp.*, 51 Ohio St.3d 139, 142, 555 N.E.2d 280 (1990). The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim. *In re Estate of Popov,* 4th Dist. No. 02CA26, 2003–Ohio–4556, ¶ 30. The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Schepflin v. Sprint-United Telephone of Ohio*, 5th Dist. No. 96–CA–62–2, 1997 WL 1102026 (April 29, 1997), citing *Stull v. Combustion Engineering, Inc.*, 72 Ohio App.3d 553, 557, 595 N.E.2d 504 (3rd Dist. 1991).

{¶45} Upp argued at the trial court level Crist was estopped from denying a contract existed to transfer Crist's ownership interest in PPG to Upp. In its February 9, 2010 judgment entry, the trial court found Upp failed to meet his burden and prove by clear and convincing evidence there was a clear and unambiguous promise between

Upp and Crist to transfer their ownership interests in PBI and PPG effective April 30, 2007. The trial court again found the evidence failed to support an agreement between Crist and Upp.

{¶46} This matter was tried to the court. As the appellate court, we do not weigh the evidence or judge the credibility of the witnesses. Our role is to determine whether there is competent and credible evidence to support the fact finder's judgment. Upp argues the facts show there was a promise between Upp and Crist for Crist to transfer his ownership interests in PPG to Upp, effective April 30, 2007. Upon our review of the facts, we find the trial court's determination there was no promise or agreement between Upp and Crist to transfer ownership interests is supported by the evidence.

{¶47} Upp's argument centers on the agreement of the parties as to the significance of April 30, 2007. Crist argued at trial, in his proposed findings of facts and conclusions of law, and at the February 5, 2010 hearing that there was a physical separation of the businesses effective April 30, 2007. After the physical separation, Crist began to wind up PBI and started operations as PBO. Conversely, Upp maintained there was a transfer of ownership interests in the businesses effective April 30, 2007. However, Upp's contention is contradicted by other areas of the record. In Upp's answer, counterclaim, and third-party complaint, Upp requested the judicial dissolution of PPG alleging the deadlock of Crist and Upp. At the time Upp filed his pleading, Upp believed Crist was a member of PPG with a 50% ownership in the company. (Upp's Counterclaim, Oct. 15, 2007). At trial, Upp stipulated Crist and Upp were 50/50 owners, equal shareholders, members and the only directors of both

PBI and PPG. (Upp's Proposed Findings of Fact and Conclusions of Law, May 4, 2009). Upp operated PPG as if PPG were solely Upp's company as of April 30, 2007, but he still considered Crist a 50% owner of PPG as of April 30, 2007.

{¶48} It was the duty of the fact finder to determine the meaning of April 30, 2007. The record shows the trial court thoroughly considered this issue with multiple briefings and hearings. The trial court ultimately found Crist's interpretation of April 30, 2007 to be more reliable. We agree. The trial court's conclusion is further supported by *Smitko v. Schiano*, 11th Dist. No. 1370, 1988 WL 64771 (June 17, 1988).

{¶49} In *Smitko*, the shareholders agreed to cease doing business in 1985 but the parties were unable to voluntarily dissolve the corporation. The parties sought a judicial dissolution. The 11th District held Ohio law does not recognize the de facto dissolution of a corporation. There exists a voluntary dissolution and a judicial dissolution pursuant to statute. The court recognized, however, the facts showed the corporation still existed but was not functional, thereby preventing one of the shareholders from being held liable for breach of fiduciary duty.

{¶50} In this case, as of April 30, 2007 PPG was functioning as a company and soliciting business. There was no evidence in the record Upp engaged in a winding up of PPG as Crist had done with PBI. As such, we find there was no de facto dissolution of PPG as of April 30, 2007.

{¶51} The first element of promissory estoppel is a promise with clear and unambiguous terms. As the trial court held, we find no competent and credible evidence of a clear and unambiguous promise between Upp and Crist to transfer

ownership interests in PPG, but rather the evidence supports a finding of a physical separation of PBI and PPG. The trial court correctly determined Upp failed to meet his burden to prove the elements of promissory estoppel.

{¶52} Upp's second Assignment of Error is overruled.

**CRIST'S CROSS-APPEAL**

ASSIGNMENTS OF ERROR

{¶53} Crist raises three Assignments of Error:

{¶54} "I. IN ITS ENTRY OF MARCH 14, 2011, THE TRIAL COURT ERRED TO THE PREJUDICE OF CROSS APPELLANT CRIST, BY ADOPTING THE REPORT OF PHIL SHANNON, CPA, TO THE EXTENT SUCH REPORT PERMITTED APPELLANT UPP TO TRANSFER SUBSTANTIAL ASSETS FROM PRECISE POWER AND GAS, LLC TO PRECISION PIPELINE, LLC DURING THE ACCOUNTING AND WIND UP PERIOD OF THAT ENTITY FOLLOWING THE COURT'S ISSUANCE OF ITS SEPTEMBER 22, 2009 ENTRY.

{¶55} "II. IN ITS ENTRY OF MARCH 14, 2011, THE TRIAL COURT ERRED, TO THE PREJUDICE OF CROSS APPELLANT CRIST, BY AWARDING APPELLANT UPP CREDIT FOR SALARY PRORATED AT THE ANNUAL RATE OF $275,000 FOR WORK MANAGING PRECISE POWER AND GAS FOR ANY POINT AFTER SEPTEMBER, 2008.

{¶56} "III. THE TRIAL COURT ERRED IN ITS ENTRIES OF APRIL 30, 2010 AND JULY 30, 2010, TO THE PREJUDICE OF CROSS APPELLANT CRIST, BY DENYING HIM THE OPPORTUNITY TO PARTICIPATE IN THE POST TRIAL ACCOUNTING AND WIND UP PROCEEDINGS OF PRECISE POWER AND GAS IN

ANY MEANINGFUL WAY, INCLUDING DENYING HIM THE RIGHT TO VIEW ALL EVIDENCE PROVIDED BY APPELLANT UPP TO THE THIRD PARTY EXPERT, PHIL SHANNON, CPA AND THE RIGHT TO PERMIT HIM TO GENERALLY CONDUCT POST TRIAL DISCOVERY AS IT RELATED TO THE NEW EVIDENCE BEING GENERATED FOR THE ACCOUNTING AND WIND UP OF PPG."

<u>ANALYSIS</u>

*I. and II.*

{¶57} In the September 22, 2009 judgment entry, the trial court ordered the final accounting of PPG from April 30, 2007 to September 30, 2009.  To perform the expert analysis and render a report, the parties selected and the trial court appointed Philip Shannon, CPA.  The trial court did not designate Shannon as a receiver.  The Shannon Report was filed on February 22, 2011.

{¶58} During the final accounting, Crist filed motions for discovery of the information provided by Upp to Shannon.  The trial court denied the motions.

{¶59} Upp filed objections to the Shannon Report.  The trial court adopted the Shannon Report with modifications on March 14, 2011.   Relevant to Crist's Assignments of Error, the Shannon Report examined the transfer of funds from PPG to Upp's new company, Precision Pipeline, LLC.  The Shannon Report found the journal entries were consistent with the trial court's orders for Upp to wind down PPG and begin his own corporation.  The Shannon Report next granted Upp a salary in the amount of $657,000 for operating PPG.  The trial court awarded Mrs. Bonnie Upp a salary in the amount of $42,000 for working for PPG, both for the period of April 30, 2007 to September 22, 2009.

{¶60} Crist's first and second Assignments of Error argue the trial court erred in adopting the Shannon Report.  In the first Assignment of Error, Crist states the trial court erred in approving the transfers from PPG to Precision Pipeline, LLC.  Crist's second Assignment of Error states that the trial court should not permit Upp and Bonnie Upp to take a salary from PPG assets from April 30, 2007 to September 22, 2009, because Upp was also permitted to transfer PPG assets to his new corporation, Precision Pipeline, LLC.

{¶61} Crist argues he was denied due process of law because the trial court would not consider his arguments as to the information the accountant was reviewing to render the final accounting.  The trial court denied Crist's motions to conduct post-trial discovery during the final accounting process.

{¶62} While Crist's Assignments of Error dispute the *results* of the trial court's adoption of the Shannon Report, the core issue in Crist's appeal is the *process* used to reach the results.  He argues there was no discovery during the final accounting process nor was there a cross-examination of the appointed accountant to question the accountant's determinations made in the Shannon Report.  Our analysis of Crist's first and second Assignments of Error require an examination of the process by which the trial court reached its March 14, 2011 judgment adopting and modifying the Shannon Report.  The examination of the process will also determine the appropriate standard of review upon which to consider the trial court's decision.

{¶63} To assist our analysis, we review *Henderson v. Teamor*, 8th Dist. No. 72787, 1998 WL 274505 (May 28, 1998).  In *Henderson*, the parties came to the trial court to resolve conflicts within their joint venture.  The parties entered into an agreed

order that outlined the resolution of their claims. They agreed to have an accounting firm conduct a full accounting of the joint venture, but the accountant would not be appointed as a receiver. The accounting firm would apply all generally accepted accounting principles and the final accounting would be binding upon the parties.

{¶64} Upon the filing of the accounting report, the parties filed objections to the report. The trial court held a hearing at which the parties were permitted to state their objections on the record. The trial court considered the objections and rendered a decision by accepting and adopting the accounting report in its entirety. The appellant appealed the order, arguing the trial court erred by accepting and adopting the accounting report. *Henderson, supra*.

{¶65} In review of the trial court's decision, the 8th District Court of Appeals utilized a weight of the evidence standard of review to consider the trial court's judgment. If the judgment was supported by competent and credible evidence within the record, the appellate court would not reverse the trial court's judgment. *Henderson, supra*

{¶66} In *Henderson*, the appellant argued the trial court's final order adopting the accounting report in its entirety was not supported by the evidence. The appellate court found, on the contrary, the record was sufficiently developed by the parties to find the judgment of the trial court was supported by competent and credible evidence. The parties filed objections to the accounting report. The trial court reviewed the accounting report and conducted hearings where the parties were permitted to voice their objections to the accountant's product on the record.

{¶67} In the present case, like *Henderson*, the trial court ordered the parties to agree to a third party accountant to conduct the final accounting of PPG. On December 15, 2009, the parties agreed to Philip Shannon, CPA. In its February 9, 2010 judgment entry, the trial court clarified the third party accountant was not a receiver. The record is silent and the parties do not outline in the briefs the specificity of the terms under which the third party accountant operated, other than reference to an "engagement letter." The "engagement letter" was not filed with the trial court.

{¶68} The process utilized in *Henderson* is similar to that engaged in the present case. The parties in *Henderson* selected a third party accountant and the accountant reviewed the business records. Both parties filed objections to the accountant's report and the trial court considered their arguments before rendering a final decision. *Henderson, supra*. A trial court is only permitted to review the evidence and arguments presented to it by the parties in order to complete its duty as fact-finder.

{¶69} In our case, Crist did not respond to the conclusions reached in the Shannon Report through objections or otherwise. There is no evidence in the record Crist requested a hearing on the Shannon Report. Crist filed motions for discovery with the trial court alluding to Upp's questionable accounting practices. However, when the Shannon Report was filed and the trial court was making its determination whether to approve the Shannon Report, the only evidence before the trial court was the information contained in the Report and Upp's objections to the Shannon Report. The March 14, 2011 judgment entry demonstrates the trial court considered the

Shannon Report, made modifications to the Report, and took into account Upp's objections.

{¶70} As in *Henderson*, we review the trial court's March 14, 2011 judgment entry under a weight of the evidence standard of review. The record before us demonstrates there was competent and credible evidence before the trial court to support the trial court's decision to approve and adopt the Shannon Report.

{¶71} Crist's first and second Assignments of Error are overruled.

*III.*

{¶72} Crist argues in his third Assignment of Error the trial court erred in denying his motions to conduct post-trial discovery during the final accounting period. We disagree.

{¶73} In the regulation of discovery, the trial court has discretionary power, and its decisions will not be overturned absent an abuse of that discretion. *Mauzy v. Kelly Servs., Inc.,* 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996); *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 57, 295 N.E.2d 659 (1973). Generally, an appellate court reviews a claimed error relating to a discovery matter under an abuse-of-discretion standard. *Lightbody v. Rust*, 137 Ohio App.3d 658, 663, 739 N.E.2d 840 (8th Dist.2000); *Trangle v. Rojas,* 150 Ohio App.3d 549, 2002-Ohio-6510 (8th Dist.)

{¶74} Crist stated in his appellate brief that he advances the third Assignment of Error solely in aid of his first and second Assignments of Error. As stated above, we have overruled Crist's first and second Assignments of Error.

{¶75} As such, we find no abuse of discretion for the trial court's denial of Crist's requests for post trial discovery. Crist's third Assignment of Error is overruled.

**CONCLUSION**

{¶76} Based on the foregoing, we overrule Upp's Assignments of Error in their totality and we likewise overrule Crist's Assignments of Error.  The judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


PAD:kgb

[Cite as *Crist v. Precise Boring, Inc.*, 2012-Ohio-2455.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHAD CRIST, et al. | : | |
| | : | |
| | : | |
| Plaintiff-Appellees/Cross-Appellants | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| PRECISE BORING, INC., et al. | : | |
| | : | |
| | : | Case No. 11-CA-21 |
| Defendant-Appellants/Cross-Appellees | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs to be split between the parties.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE