[Cite as *DiPenti v. Park Towers Condominium Assn.*, 2020-Ohio-4277.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Margaret DiPenti, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-384 |
| v. | : | (C.P.C. No. 17CV-7914) |
| Park Towers Condominium Association et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on September 1, 2020

**On Brief:** *Ric Daniell*, for appellant. **Argued:** *Ric Daniell*.

**On Brief:** *Williams & Strohnm, LLC*, and *Nicholas R. Barnes*, for appellees. **Argued:** *Nicholas R. Barnes*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Margaret DiPenti, appeals from a decision of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees Park Towers Condominium Association (the "Association") and Towne Properties, Ltd., and awarding the Association judgment in the amount of $13,367.50, including $12,642.50 in attorney fees, plus court costs. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} The Association is the condominium unit owners' association for the Park Towers Condominium (the "Condominium"), located at 1620 East Broad Street, Columbus, Ohio, 43203. (Oct. 5, 2017 Countercl. of Park Towers Condominium

Association ("Countercl."), ¶ 1, 4; Pl.'s Oct. 24, 2017 Reply to Countercl. of Defendants ("Reply"), at ¶ 1.)    DiPenti is the record owner of Unit 910 (the "Unit") in the Condominium.  (Countercl., at ¶ 4, Reply at ¶ 3.)  As record owner of the Unit, DiPenti is subject to the covenants, conditions, and restrictions set forth in the Declaration of Condominium Property for The Park Towers Condominium (the "Declaration")[1] (Countercl. at ¶ 5; Reply at ¶ 3; Jill Isaly Aff. at ¶ 5.)

{¶ 3}    On or about April 24, 2017, the drain line to the unit's kitchen sink ("Drain Line") failed and caused a leak into the unit below.  (Countercl. at ¶ 6, Reply at ¶ 4; William "Biff" Heisler Aff. at ¶¶ 13-14.)  The Association notified DiPenti of the leaking Drain Line and the need for urgent repairs.  (Countercl. at ¶ 6; Reply at ¶ 5.)  DiPenti authorized the Association to have the Drain Line repaired, and the Association hired a plumbing contractor to make the repair.  (Countercl. at ¶¶ 6-11; Reply at ¶¶ 5-8.)

{¶ 4}    The repair to the Drain Line was performed by Biff's Plumbing, LLC ("Biff's").  (Heisler Aff. at ¶¶ 11-16.)  Biff's owner, William "Biff" Heisler arrived at the Condominium after being contacted by the Association and was given access to unit 809 in the Condominium, the unit below DiPenti's, to investigate the leak.  (*Id.* at ¶¶ 11-12.) Heisler removed a portion of unit 809's ceiling and observed a leak coming from a portion of the drain line just below the Unit.  (*Id.* at ¶ 13.)  Heisler needed to access the Unit to complete his investigation and repairs.  (*Id.* at ¶ 15.)  Ultimately, Heisler removed and replaced the portion of the Drain Line from the connection to the common line to the tee of the Unit's kitchen sink.  (*Id.*)  Thus, the repairs to the Drain Line were not limited to the portion of the Drain Line located below the Unit's floor; rather, the portion of the Drain Line located within the walls of the Unit was replaced.  (*Id.*)

{¶ 5}    Heisler is often called by the Association and Condominium unit owners to repair kitchen sink drain lines located both inside and outside the walls of a unit.  (*Id.* at ¶ 17.)  When Heisler repairs drain lines between a unit's kitchen sink and the common drain line, regardless of whether inside or outside the walls of a unit, Heisler sends an invoice for the repairs to the unit owner.  (*Id.*)  In this case, because the repairs to the Drain Line involved a drain pipe that only served the Unit and a portion of the Drain Line

---

[1] The Declaration is attached as Exhibit A-1 to the December 20, 2018 Defendants' Motion for Summary Judgment (the "MSJ").

that was replaced was actually located within the bounds of the Unit, Biff's sent an invoice for $725 (the "Repair Cost") to DiPenti, the owner of the Unit, for his services on April 24, 2017 (the "Invoice").  (*Id.* at ¶ 16; Invoice[2].)

{¶ 6}  DiPenti told Heisler that she was trying to file an insurance claim to pay the Invoice.  (*Id.* at ¶ 19.)  After a few weeks went by without payment of the Invoice, Heisler contacted DiPenti, who advised Heisler that her insurance claim had been denied and directed him to send the Invoice to the Association for payment.  (*Id.)*  On May 20, 2017, Heisler sent the Invoice to the Association, which paid the Invoice for the Repair Cost.  (*Id.*)

{¶ 7}  Subsequently, the Association informally attempted to recover the Repair Cost from DiPenti.  (Countercl. at ¶¶ 10, 12, 17-19 & Ex. 2 to Counterclaim; Reply, ¶¶ 9, 13.)  DiPenti refused to reimburse the Association for the Repair Cost, and the Association initiated its attempt to formally collect the Repair Cost from DiPenti by giving her written notice and an opportunity for a hearing.  (Countercl. at ¶¶ 10-27 & Exs. 1-3 to Countercl.; Reply at ¶¶ 8-10, 14-15.)  DiPenti did not request a hearing and did not reimburse the Association for the Repair Cost.  (*Id.*)

{¶ 8}  On September 1, 2017, DiPenti filed a complaint in the common pleas court, asserting three claims: Count One, the Association improperly assessed the $725 Repair Cost against her Unit because the Drain Pipe was in a common area; Count Two, the Association improperly released "confidential financial information" causing her embarrassment and injury;[3] and Count Three, the Association and Towne Properties failed to properly maintain all common areas of the Condominium and, therefore, DiPenti was entitled to an accounting. (See Compl.)  An amended complaint was filed on September 4, 2017 which was identical except that it did not include two exhibits that were originally filed.  (See Am. Compl.)

{¶ 9}  On October 5, 2017, the Association and Towne Properties filed a combined answer, and the Association filed a counterclaim for a judgment pursuant to R.C.

---

[2] The invoice is attached as Exhibit B-1 to the MSJ.

[3] Count Two was dismissed by the trial court in its August 15, 2018 Decision and Entry and is not part of this appeal.

5311.23(B) "declaring that the Drain Line is part of [DiPenti's] Unit under Article V, Section 2(a)(iii) of the Declaration and that Ms. DiPenti, as the Unit's owner * * * is responsible for all repair and maintenance of the Drain Line, including the Repair Cost, under Article VIII, Section 2(a) of the Declaration."   (See Countercl.)  The Association also asserted a counterclaim for damages pursuant to R.C. 5311.18(A), 5311.19(A) and Article XIII, Section 4(f) of the Declaration for collection costs, including attorney fees, incurred in connection with filing an action to collect the $725 Repair Cost.  (*Id.*)

{¶ 10} On December 20, 2018, the Association filed a motion for summary judgment, and on February 27, 2019 the trial court granted summary judgment in favor of the Association and Towne Properties on DiPenti's claims and on the Association's counterclaims.  (Feb. 27, 2019 Decision and Entry.)  After a damages hearing held by the trial court's magistrate, the magistrate issued a decision awarding the Association $13,367.50, which included $725 for the Repair Cost of the plumbing repair and $12,642.50 in attorney fees.  (April 23, 2019 Mag. Decision Following Damages Hearing.)  No objections to the magistrate's decision were filed.

{¶ 11} Subsequently, the trial court issued an order and entry adopting the magistrate's decision and awarding judgment in favor of the Association in the amount of $13,367.50, plus court costs.  (May 16, 2019 Order and Entry Adopting the Mag. Decision Entered April 23, 2019.)  This timely appeal followed.

## II.  Assignments of Error

{¶ 12} Appellant asserts the following two assignments of error for our review:

> [I.] The trial court erred in granting appellee's [sic] motion for summary judgment in that such judgment was against the manifest weight of the evidence as plaintiff-appellant has demonstrated that genuine issues as to material facts existed.
>
> [II.] The trial court's decision was not reasonable within the meaning of ORC 5311.19(A).

## III.  Discussion

### A.  First Assignment of Error – Summary Judgment

{¶ 13} In her first assignment of error, DiPenti argues that the trial court erred in granting summary judgment in favor of the Association on DiPenti's claims and the Association's counterclaim.  We do not agree.

{¶ 14} An appellate court reviews summary judgment under a de novo standard. *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 16, citing *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.). Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds viewing the evidence most strongly in favor of the non-moving party could reach but one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29.

{¶ 15} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 16} A fact is "material" if it "might affect the outcome of the suit under the applicable substantive law." *Mitchell v. Mid-Ohio Emergency Servs., L.L.C.*, 10th Dist. No. 03AP-981, 2004-Ohio-5264, ¶ 12. A "genuine" issue of material fact exists to prevent summary judgment only if "a reasonable jury could find that the evidence satisfies the evidentiary standards required at trial." *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, ¶ 33.

{¶ 17} "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

{¶ 18} Notwithstanding the foregoing admonition, it is well-established that "the evidence necessary to create a genuine issue of material fact must be more than just bare, unsupported assertions" and that "a 'party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact.' " *Eichenberger v. Tucker*, 10th Dist. No. 12AP-515, 2013-Ohio-805, ¶ 9, quoting *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. No. CA2009-07-178, 2010-Ohio-2961, ¶ 10, citing *TJX Cos., Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, ¶ 30 (8th Dist.); *see also White v. Sears, Roebuck & Co.*, 10th Dist. No. 10AP-294, 2011-Ohio-204, ¶ 7 (a non-movant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence); *Pinchot v. Mahoning Cty. Sheriff's Dept.*, 164 Ohio App.3d 718, 2005-Ohio-6593, ¶ 24 (7th Dist.) (generally, self-serving affidavits cannot be used by the non-moving party to survive summary judgment).

{¶ 19} As a preliminary matter, we address DiPenti's assertion in her first assignment of error that the judgment was against the manifest weight of the evidence. "[A] manifest-weight challenge to summary judgment 'is a non-sequitur because, on summary judgment, a court may not weigh the evidence.' " *Grenga v. Youngstown State Univ.*, 10th Dist. No. 11AP-165, 2011-Ohio-5621, ¶ 29, quoting *Westfall* at ¶ 9. "An appellate court may summarily overrule assignments of error challenging summary judgment based on the manifest weight of the evidence." *Id.* Therefore, we summarily overrule that portion of the first assignment of error that relates to DiPenti's argument concerning the manifest weight of the evidence.

{¶ 20} Turning to the substance of the matter before us, we wholeheartedly agree with the proposition set forth by the Association in its brief that "[t]he singular determination necessary for the resolution of both Count One of the Amended Complaint and the Counterclaim is whether DiPenti or the Association is responsible for the Repair Cost." (Brief of Appellees at 11.) As explained below, we find DiPenti is responsible for the Repair Cost.

{¶ 21} " '[C]ondominium declarations and bylaws are contracts between the association and the purchaser.' " *Murtha v. Ravines of McNaughton Condo. Assn.*, 10th Dist. No. 09AP-709, 2010-Ohio-1325, ¶ 13, quoting *Acacia on the Green Condominium Assn., Inc. v. Gottlieb*, 8th Dist. No. 92145, 2009-Ohio-4878, ¶ 20, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36 (1987). The construction of written contracts involves issues of law that appellate courts review de novo. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. " '[I]f the contract terms are clear and precise, the contract is not ambiguous and the trial court is not permitted to refer to any evidence outside of the contract itself.' " *Antonucci v. Ohio Dept. of Taxation*, 10th Dist. No. 09AP-629, 2010-Ohio-3326, ¶ 8, quoting *Ryan v. Ryan*, 9th Dist. No. 19347 (Oct. 27, 1999). Further, when a written instrument is unambiguous, parol evidence will not be considered in an attempt to demonstrate an ambiguity that otherwise does not exist. *Antonucci* at ¶ 8, citing *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638 (1992), citing *Stony's Trucking Co., v. Pub. Util. Comm.*, 32 Ohio St.2d 139, 142 (1972).

{¶ 22} Article VIII of the Declaration at issue in this case governs Maintenance and Repair and provides that the Association is responsible for repairing and maintaining the common areas of the Condominium and unit owners are responsible for repairing and maintaining their units. (*See, generally*, Declaration, Art. VIII, Sec. 1 and 2.) Article VIII, Section 2(a) of the Declaration clearly and unambiguously provides that "[e]ach Unit Owner shall repair and maintain his Unit and all components thereof." (Declaration, Art. VIII, Sec. 2(a)).

{¶ 23} The Declaration further provides a detailed definition of the portions of the Condominium property that constitute a unit. A "Unit" is defined to include "[a]ll plumbing * * * and other utility or service lines, pipes, wires, ducts or conduits which serve either the Unit or the fixtures located therein, and which are located within the bounds of the Unit."

(Declaration, Art. V, Sec. 2(a)(vi).) A Unit also includes "[a]ll fixtures and appliances located within the bounds of a Unit installed in and for the exclusive use of that Unit, commencing at the point of disconnection from the structural body of the building and from the point of disconnection of utility pipes, lines or systems serving the entire building or more than one Unit thereof." (Declaration, Art. V, Sec. 2(a)(iii).) The common areas of the Condominium, for which the Association is responsible for maintenance and repair, are defined as only those parts of the Condominium that are not otherwise defined as "Units." (Declaration, Art. VI, Sec. 1(a).)

{¶ 24} The admissible evidence submitted by the Association in support of its motion for summary judgment fully substantiates the conclusion that the Drain Line is part of DiPenti's Unit. Heisler attested in his affidavit that in order to repair the leak, he had to enter the Unit and replace the Drain Line located within the bounds of the Unit. (Heisler Aff., ¶ 15.) Because the Drain Line is located within the bounds of the Unit, it falls under the definition of "Unit" as set forth in Art. V, Sec. 2(a)(vi) of the Declaration. The Drain Line also falls under the definition of "Unit" as set forth in Art. V, Sec. 2(a)(iii) of the Declaration, because the kitchen sink is a fixture within the Unit, the sink is installed in and for the exclusive use of the Unit, the Drain Line is part of the sink, and the Drain Line extends from the sink's drain to the building's utility pipes, lines, or systems serving the entire building or more than one unit thereof. (Heisler Aff. at ¶¶ 14-18.) The Drain Line constitutes part of DiPenti's Unit, and it is not part of the common areas of the Condominium for which the Association is responsible for repairing and maintaining. The Association has established that no genuine issue of material fact exists on the issue of whether DiPenti or the Association is responsible for the Repair Cost.

{¶ 25} Nonetheless, DiPenti asserts the trial court erred in granting summary judgment because she submitted evidence demonstrating a genuine issue of material fact as to whether she or the Association is responsible for the Repair Cost. More specifically, in response to the Association's motion for summary judgment before the trial court, DiPenti submitted her own affidavit in which she attests that "Defendant Towers has paid for identical or similar repairs (as those that were required to my unit) to condominium units in the past" and "[d]espite what language there may be in the by-laws and rules of Defendant Towers, * * * the fact that the Defendant pays for some owners' repairs and

denies other's [sic] request is an unwarranted unequal treatment." (DiPenti Aff. at ¶ 4-5.) Yet, DiPenti has not provided any supporting documentation or evidence that would corroborate her allegation that the Association has paid for identical or similar repairs to other owners' units. This alone is fatal to DiPenti's argument that she has demonstrated genuine issues of fact because, as discussed previously, "a 'party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact.' " *Eichenberger* at ¶ 9, quoting *Bloom* at ¶ 10, *TJX Cos.* at ¶ 30. Moreover, by attesting the repairs performed "were required to my unit" (DiPenti Aff. at ¶ 4), DiPenti has is in fact conceded that the Drain Line is part of her Unit. In sum, DiPenti's Affidavit consists of anecdotal and self-serving allegations which are wholly insufficient to create a genuine issue of material fact on the issue of who is responsible for the repair cost.

{¶ 26} On appeal, DiPenti now also argues that because the statements Heisler set forth in his Affidavit ostensibly conflict with the statements DiPenti set forth in her Affidavit, there are genuine issues of fact concerning who is responsible for the Repair Cost. But this argument was not made by DiPenti in response to the Association's motion for summary judgment below. It is well-settled that " 'issues not initially raised in the trial court may not be raised for the first time on appeal.' " *Amare v. Chellena Food Express, Inc.*, 10th Dist. No. 08AP-678, 2009-Ohio-147, ¶ 14, quoting *Ohio Civ. Rights Comm. v. Triangle Real Estate Servs., Inc.*, 10th Dist. No. 06AP-157, 2007-Ohio-1809, ¶ 11; *Stevens Skin Softener, Inc. v. Revco Drug Stores, Inc.*, 121 Ohio App.3d 212, 218 (8th Dist.1997); *Crist v. Precise Boring, Inc.*, 5th Dist. No. 11-CA-21, 2012-Ohio-2455, ¶ 41 (overruling assignment of error concerning implied contract theory because the issue was not raised at the trial court level). An appellant cannot change the theory of her case and present new arguments for the first time on appeal. *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177 (1992); *see also State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997) ("These rules are deeply embedded in a just regard for the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause [and] do not permit a party to sit idly by until he or she loses on one ground only to

avail himself or herself of another on appeal.").  Therefore, we decline to consider this new argument of DiPenti.

{¶ 27}  In short then, as pertains to both DiPenti's first claim and the Association's counterclaim, there simply are no genuine issues of material fact regarding whether DiPenti or the Association is responsible for the Repair Cost.  Instead, the admissible evidence overwhelmingly and conclusively establishes it is DiPenti who is responsible for it.

{¶ 28}  Turning to Count Three of DiPenti's amended complaint, we observe DiPenti presents another argument on appeal that she did not raise before the trial court. Specifically, she asserts there are "complicated circumstances" and "confusion" regarding the term special assessments as used by the Association which supports her demand for an accounting.  (Brief of Appellant at 14.)  Putting aside the vagueness and general lack of clarity of DiPenti's assertion, as we have already explained above, because DiPenti did not make this argument in the trial court, she is barred from raising it now.  *Amare*, 2009-Ohio-147, ¶ 14 (Internal citations omitted.)

{¶ 29}  Furthermore, even if we were to consider this new argument of DiPenti for the first time on appeal, the argument is unavailing.  In essence, DiPenti is attempting to argue that objections made by the Association's counsel in response to DiPenti's discovery requests concerning special assessments support her argument (raised for the first time on appeal) that there was confusion concerning special assessments, and therefore she is entitled to an accounting.  Not only is the foregoing reasoning entirely circular, it is entirely illogical.  Obviously, DiPenti filed her lawsuit in which she sought an accounting as Count Three *before* her discovery requests were ever propounded and objected to.  Therefore, it is impossible for the objections to DiPenti's discovery requests to have formed the basis for her claim that she is entitled to an accounting.  And, as a review of the record evinces no other basis upon which she might be entitled to an accounting, the trial court did not err in granting summary judgment in favor of the Association on this claim.

{¶ 30}  In the final analysis, DiPenti has failed to produce sufficient evidence from which a reasonable jury could find in her favor on her claims and on the Association's counterclaims.   Instead, the only evidence submitted by DiPenti in rebuttal to the Association's motion for summary judgment and the evidence upon which it is properly supported is her own affidavit, which consists of conclusory, anecdotal and self-serving

allegations. As discussed above, this is simply not enough to survive an otherwise properly supported motion for summary judgment. Furthermore, the affidavit includes an admission that the Drain Line is part of her Unit. Therefore, there are no genuine issues of material fact in this case and it was not error for the trial court to grant summary judgment in favor of the Association. Accordingly, DiPenti's first assignment of error is overruled.

## B. Second Assignment of Error – Attorney Fees

{¶ 31} In her second assignment of error, DiPenti argues trial court's decision to award $12,642.50 in attorney fees was not reasonable within the meaning of R.C. 5311.19(A). We find no merit to appellant's position.

{¶ 32} R.C. 5311.19(A) and Article XIII, Section 4(f) of the Declaration central to this matter authorize an award of reasonable attorney fees in connection with appellees' counterclaim for collection of the $725 Repair Cost. R.C. 5311.19(A) provides in relevant part:

> All unit owners * * * of a condominium property shall comply with all covenants, conditions, and restrictions set forth in a deed to which they are subject or in the declaration, the bylaws, or the rules of the unit owners association, as lawfully amended. Violations of those covenants, conditions, or restrictions shall be grounds for the unit owners association * * * to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action.

{¶ 33} The Supreme Court of Ohio has held that " ' "where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." ' " *In re Estate of Born*, 10th Dist. No. 06AP-1119, 2007-Ohio-5006, ¶ 15, quoting *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985). Accordingly, we will affirm the trial court's judgment absent an abuse of discretion.[4] "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

---

[4] DiPenti asserts in her brief that the standard of review should be de novo, but this is incorrect.

{¶ 34} DiPenti argues the award of $12,642.50 was unreasonable in the face of the underlying judgment of $725 because it is disproportionate. (Brief of Appellant at 17.) DiPenti's proportionality argument fails. This is so because "[p]roportionality is not synonymous with reasonableness." *Miller v. Grimsley*, 10th Dist. No. 09AP-660, 2011-Ohio-6049, ¶ 16. " 'A "reasonable" fee must be related to the work reasonably expended on the case and not merely to the amount of the judgment awarded.' " *Id.*, quoting *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.,* 177 Ohio App.3d 7, 2008-Ohio-148, ¶ 45, quoting *Roth Produce Co. v. Scartz,* 10th Dist. No. 01AP-480, 2001-Ohio-8866. Indeed, "[t]his court has repeatedly held that attorney fees need not be mathematically proportionate to the amount of damages." *Id.*, citing *Luft v. Perry Cty. Lumber & Supply Co.*, 10th Dist. No. 02AP-559, 2003-Ohio-2305, ¶ 42; *Dehoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. No. 02AP-454, 2003-Ohio-3334, ¶ 141. And, " ' "a court should not reduce attorney fees based on a simple ratio of successful claims." ' " *Miller*, quoting *Hollingsworth v. Time Warner Cable*, 168 Ohio App.3d 658, 2006-Ohio-4903, ¶ 82 (1st. Dist.), quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir.1996).

{¶ 35} Furthermore, as pointed out by the Association, it was DiPenti who initiated the lawsuit against the Association and forced the engagement of lengthy litigation, even after being offered a payment plan to pay the $725 Repair Cost. She cannot be heard now to complain that the Association incurred too much in attorney fees in defending against her lawsuit and successfully pursuing its counterclaim against her.

{¶ 36} Moreover, as noted above, in the trial court DiPenti failed to file objections to the magistrate's decision regarding attorney fees. Civ.R. 53(D)(3)(b)(iv) makes clear that on appeal, any party who fails to object to the magistrate's decision before the trial court is barred from raising objections in this court except to assert a claim of plain error in the trial court's decision:

> *Waiver of right to assign adoption by court as error on appeal.* Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

(Emphasis sic.)  Civ.R. 53(D)(3)(b)(iv).

{¶ 37}  Although DiPenti does not acknowledge in her appellate brief that she failed to file objections to the magistrate's decision awarding attorney fees before the trial court, the record is clear she did not.  Therefore, DiPenti has waived any claim of error on appeal other than a claim of plain error.  *State ex rel. Findlay Industries v. Indus. Comm.*, 121 Ohio St.3d 517, 2009-Ohio-1674, ¶ 3; *see also, e.g., Lavelle v. Lavelle*, 10th Dist. No. 12AP-159, 2012-Ohio-6197, ¶ 8. Furthermore, DiPenti neither alleges nor otherwise demonstrates plain error on this issue.  Thus, DiPenti has forfeited all arguments against the trial court's decision awarding the Association its reasonable attorney fees in her appeal before this court.  Accordingly, her second assignment of error is overruled.

## IV.  Disposition

{¶ 38}  Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and KLATT, J., concur.

———————————